[No. 62316-3. En Banc. December 7, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL COLE, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. JAMES SZYMANOWSKI, *Appellant*.

264

*Andrew L. Subin*; and *Steinborn & Associates*, by *Jeffrey Steinborn* and *Nicholas C. Holt*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Peter J. Stokstad, Michele A. Hauptman, Francis D. Zavatsky*, and *Barbara A. Mack, Deputies*, for respondent.

TALMADGE, J. — Petitioners Michael E. Cole and James Szymanowski were both convicted for drug-related offenses. Prior to their convictions, each was subjected to a civil forfeiture action that resulted in the forfeiture of certain personal property. Cole and Szymanowski now seek vacation of their convictions and sentences claiming their criminal convictions violated the double jeopardy clauses of the United States Constitution and of the Constitution of the State of Washington. U.S. CONST. amend 5; WASH. CONST. art. I, § 9. Cole also seeks reversal of the trial court's denial of his motion to suppress, and dismissal of his case for lack of evidence.

We hold that the civil forfeiture of "proceeds," as defined by RCW 69.50, is not punishment and does not implicate double jeopardy. With respect to the search warrant in Cole's case, we affirm the trial court's denial of his motion to suppress. Cole's conviction is affirmed. Szymanowski's case is remanded to the trial court for a determination of whether proceeds were civilly forfeited in his case.[1]

## ISSUES

1. Does jeopardy attach upon the civil forfeiture of the proceeds of illegal drug transactions within the meaning of RCW 69.50.505(a)(7)?

2. Were proceeds of illegal drug transactions forfeited in the present case?

3. Was evidence provided by a citizen informant who witnessed drug activity and by an officer who smelled

---

[1]The concurring opinion of Justice Alexander agrees in this disposition of the case. It would go further to hold that if the trial court in Szymanowski's case determines on remand that the forfeited property was not proceeds of illegal drug transactions, double jeopardy would be implicated as Justice Johnson has suggested in the dissent. We disagree. *See infra* note 18.

growing marijuana, and evidence of power consumption obtained from a utility pursuant to a search warrant, sufficient to establish probable cause that a crime was committed so that a search warrant should issue?

## FACTS

### State v. Cole[2]

In early June 1992, the King County Police Drug Enforcement Unit received a telephone call from a citizen informant who believed a neighborhood residence in Issaquah, Washington, was being used to grow marijuana or for some other illegal activity. According to Detective Joseph Gaddy, who investigated the tip, the informant reported the house appeared unoccupied, but some young men came two or three times a week, staying for only a few minutes each time. The informant described the young men's appearances and one of their automobiles. The informant also stated he or she and other neighbors had smelled something unusual apparently coming from the house.

Gaddy drove to the house to investigate. The yard was overgrown, the house did not look lived in, and the basement windows were covered. Although it was daylight, the porch light and an interior light were left on. There was no response to Gaddy's knock on the front door. As he

---

[2]In *State v. Cole*, the Report of Proceedings designated by the parties is in five volumes, denoted as follows:

Report of Proceedings I: Proceedings on May 18, 1993;

Report of Proceedings II: Proceedings on May 19, 1993;

Report of Proceedings III: Proceedings on May 20, 1993;

Report of Proceedings IV: Proceedings on July 30, 1993;

Report of Proceedings V: Proceedings on August 23, 1993.

In *State v. Szymanowski*, the Report of Proceedings designated by the parties is in two volumes, denoted as follows:

Report of Proceedings (S) I: Proceedings on July 16, 1993;

Report of Proceedings (S) II: Proceedings on September 24, 1993.

walked past the garage, Gaddy heard a humming sound he recognized as a ballast for fluorescent or metal halogen lights and fan motors operating inside the garage. Gaddy then stepped around the side of the garage to the electric meter for the house, located approximately two feet from the corner of the house nearest the driveway. The electric meter was spinning very rapidly, faster than Gaddy believed would be observed if the house were occupied. He also smelled the odor of growing marijuana. As Gaddy returned to his car, he noticed a new metal chimney erected some distance away from the older masonry chimney.

The next day, based on these observations, Gaddy filed an affidavit for a search warrant for electrical utility and telephone account information for the suspect residence. The affidavit summarized Gaddy's training and experience, the allegations made by the citizen informant, Gaddy's observations of the residence on June 9, 1992, and the basis for his suspicion that a marijuana grow operation existed in the house. Clerk's Papers at 86-89. The affidavit did not reveal the identity of the citizen informant, although the police knew who the informant was. Clerk's Papers at 87.

A search warrant for the power account information was issued on June 12, 1992, from the King County District Court. Clerk's Papers at 92-93.[3] The power records obtained from Puget Sound Power and Light Company showed high power consumption, averaging 7,000 KWH per two-month billing period or about $400 worth of power, contrasted with an average of about 1,900 KWH per billing period, worth about $95, over the last six months of the prior tenants' occupancy in the residence.

On June 30, 1992, the King County District Court issued a search warrant for the suspect residence and two

---

[3]The date on which the power consumption records were obtained is not clear from the record. The search warrant is dated June 12, 1992. The inventory and return of search warrant are dated June 10, 1992. These dates suggest the search preceded the warrant. Because no party raises this chronology, however, it is not an issue we need address.

automobiles seen frequently at the residence. The warrant was based upon an expanded affidavit by Gaddy, which contained a summary of the information obtained from the power consumption records, and added the results of further investigation into the allegations in his previous affidavit. The affidavit described a visit to the residence on June 10, 1992, by Officer J.R. Hall, during which Hall reported smelling growing marijuana while standing in a neighbor's yard approximately ten feet from the suspect house. The affidavit described Hall as a member of a pro-active unit addressing street level narcotics trafficking, who, in more than two years as a police officer, had been involved with numerous marijuana grow operations and was familiar with the smell of growing marijuana. Clerk's Papers at 66, 76.

The Gaddy affidavit also contained additional information from the citizen informant identifying three automobiles used by the persons frequenting the house, and providing the license plate numbers for two of those vehicles. Gaddy stated he believed the informant to be very reliable because the informant had lived in the neighborhood for several years and worked in the community, had extended family in the community, had no criminal record, and came forward voluntarily and without requesting compensation. Clerk's Papers at 75.

The affidavit identified the registered owner of one vehicle as Fred Hatcher, who had been arrested twice and convicted once for violation of the Uniform Controlled Substances Act,[4] and whose auto repair business appeared to be a front for cocaine distribution. The affidavit included additional information recorded during surveillance of the residence, including visits of various individuals. Gaddy's

---

[4]Cole, in support of his motion to suppress before the trial court, asserted statements in the affidavit regarding Fred Hatcher's conviction and prison record were material misstatements. Clerk's Papers at 17. Cole provides a document showing Hatcher was convicted once of attempted violation of the Uniform Controlled Substances Act, a misdemeanor, and received a suspended sentence. Clerk's Papers at 30-31. Cole did not raise this issue on review, so we do not consider it.

investigation revealed a connection between Hatcher and Cole. Report of Proceedings I at 38; Clerk's Papers at 79. The affidavit also reported Cole had two prior convictions for violation of the Uniform Controlled Substances Act and described Cole's resistance during a prior arrest.

On June 30, 1992, officers with the King County Drug Enforcement Unit executed the warrant to search the suspect house. They discovered Cole at the house and arrested him. During the search, the officers discovered evidence of a marijuana grow operation, including marijuana plants and grow equipment.

On July 1, 1992, as authorized by RCW 69.50.505, police officers seized a 1988 Chevrolet truck, one 1990 Kawasaki jet ski, one Yamaha jet ski, and a cellular telephone, and notified Cole of their intention to seize a 1976 Sanger ski boat and homemade boat trailer, all in Cole's apparent possession, based on probable cause to believe this property had been acquired with proceeds traceable to violations of RCW 69.50. Clerk's Papers at 48. On January 27, 1993, the court entered an agreed order forfeiting Cole's interest in the truck, jet skis, and cellular telephone, and directing the return of the ski boat and trailer to him. Clerk's Papers at 50.

On December 30, 1992, Cole was charged with one count of violating the Uniform Controlled Substances Act: possession of marijuana with intent to deliver. Cole moved to suppress evidence from the search of the residence, based on lack of probable cause. He argued the power records were obtained in violation of RCW 42.17.314. He also asserted there was no showing the informant was knowledgeable and reliable. Finally, he contended Gaddy's search of the area beyond the corner of the house was a warrantless search of the curtilage of the property. The trial court rejected the first two contentions, but accepted Cole's argument that Gaddy was in a constitutionally protected area of the curtilage of the house when he observed the electrical meter and smelled growing marijuana. After redacting this evidence, the trial court

nevertheless found sufficient probable cause to support the search warrant. Clerk's Papers at 69-72.

On May 21, 1993, Cole was convicted as charged upon stipulated facts. Clerk's Papers at 8-23, 52. He then moved to vacate his conviction and dismiss the charge on double jeopardy grounds. The trial court denied the motion and this appeal followed.

### State v. Szymanowski

On November 24, 1992, Szymanowski was arrested on a traffic violation. A subsequent search located a small amount of cocaine on his person. Not content with one problem, Szymanowski was arrested again on January 4, 1993, after attempting to elude a Washington State Patrol trooper. After the arrest and a search of his vehicle, troopers seized his 1978 Firebird and its contents, which included a container of cocaine, two guns, a radar detector, a pager, a scanner, two butane torches, some glass pipes, two glass bongs for smoking marijuana, and $290 in cash. Clerk's Papers at 10-12, 63-64, 112-14, 124. The arresting trooper found on Szymanowski's person over $2,000 in cash, a safe deposit box key, and a business card from Mini-Max Storage, located at 2656 15th Avenue West in Seattle (on the business card were written two locker numbers: N-23 and W-22). Clerk's Papers at 9, 112-13, 122. The safe deposit key was to a Seafirst Bank safe deposit box, which was rented by Szymanowski. Clerk's Papers at 119, 122. After obtaining a search warrant, troopers searched the trunk of the Firebird on January 5, 1993. Inside, they found approximately 58 grams of cocaine.

The State Patrol immediately initiated proceedings to forfeit all of the seized items. Szymanowski was served with a seizure notice for the Firebird and the cash on January 5, 1993. On January 8, 1993, Szymanowski declared his ownership interest in the Firebird and items previously seized. Also on January 8, 1993, Bellevue Detective William Lathrop served a search warrant on the safe deposit box and seized $20,000 in cash. A police dog

indicated the money was associated with narcotics. Three days later, Lathrop served the search warrant on the storage lockers and seized three guns, two knives, a cellular telephone, drug sales records, several crack pipes, a water pipe, plastic baggies, a scale, and a measuring cup containing drug residue. Clerk's Papers at 10, 123. Lathrop arrested Szymanowski when he arrived at the storage lockers. The police seized an additional ounce of cocaine and $5,585 from his person. Clerk's Papers at 10, 59.

On January 14, 1993, the King County prosecutor charged Szymanowski with one count of possession of cocaine, committed on November 24, 1993 (count 1), and one count of delivery of cocaine, committed on January 11, 1993 (count 4). On May 25, 1993, the State filed an amended information adding one count each of attempting to elude a pursuing police vehicle (count 2) and possession of cocaine with intent to deliver (count 3), both committed on January 4, 1993.

On March 16, 1993, the parties reached an agreement under which Szymanowski agreed to forfeit a gun, radar detector, pager, scanner, and $1,800 cash, and the State agreed to return the car and $200 in cash. Clerk's Papers at 92-94.

Szymanowski pleaded guilty to counts 2, 3, and 4 on July 20, 1993. Count 1 was dismissed on January 10, 1994, because it had been omitted from the judgment and sentence. At sentencing, Szymanowski argued punishment for count 3 (possession with intent to deliver on January 4, 1993) was prohibited by double jeopardy because forfeiture of his property constituted punishment and former jeopardy. Report of Proceedings (S) II at 3-7. The trial court rejected his argument. Report of Proceedings (S) II at 20-28. Szymanowski filed a timely appeal.

As Cole and Szymanowski both raised the same issue of double jeopardy, the court of appeals consolidated the

cases and certified them to this court. Order of Certification at 1.

## ANALYSIS

### Double Jeopardy

The most critical issue in these cases is whether the Cole/Szymanowski criminal convictions subsequent to the civil forfeitures trigger double jeopardy protection. In these cases, Cole and Szymanowski settled the civil forfeiture actions before the criminal convictions were entered to set the stage for their double jeopardy argument.

We address the double jeopardy issue in the midst of a maelstrom of judicial activity, much of it in the civil forfeiture arena.[5] The ferment over double jeopardy in the courts is perhaps best exemplified by the United States Supreme Court, where, in a fractured and quarrelsome 5-to-4 decision, with only Justice Kennedy fully joining Justice Scalia's majority opinion, and with four other justices writing separately to concur and dissent, the Court in 1993 overruled a decision it had made just three years previously.[6]

The double jeopardy clause of the federal constitution protects against a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989). Multiple punishments are permissible if imposed in the same proceeding; they are barred if imposed in separate proceedings. *Halper*, 490

---

[5]In 1980, there were 40 cases in all state and federal courts that considered issues of double jeopardy and forfeiture. By 1994, that number had increased to 146. As of this writing, 49 courts in 1995 have addressed these issues.

[6]*United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993) (overruling "same conduct" test in *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990), and adopting "same elements" test for analyzing double jeopardy). "When it requires a chart to determine which paragraphs of a United States Supreme Court decision constitute the law of the land, you know you are in trouble." *State v. Kurzawa*, 180 Wis. 2d 502, 529, 509 N.W.2d 712, 723 (1994) (Abrahamson, J., concurring) (discussing the "disarray" in double jeopardy jurisprudence stemming from *Dixon*).

U.S. at 450-51; *Missouri v. Hunter*, 459 U.S. 359, 368-69, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). Double jeopardy is a fundamental principle in Anglo-American jurisprudence protecting individuals from excessive government action. *Ex parte Lange*, 85 U.S. 163, 168, 21 L. Ed. 872 (1873); *Bartkus v. People*, 359 U.S. 121, 151-55, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959) (Black, J., dissenting).

 In the cases at bar, Cole and Szymanowski claim that the forfeitures followed by their criminal convictions amount to multiple punishments for the same offense, and that their criminal convictions, having been imposed after former jeopardy had attached with the civil forfeitures, are prohibited by the double jeopardy clause.[7] In analyzing these claims, we must decide if the civil forfeitures that occurred amounted to constitutional punishments. If they were not punishments, the subsequent convictions of Cole and Szymanowski do not implicate double jeopardy concerns.

1. Civil Forfeiture as Punishment

The employment of forfeiture in the war on drugs began in 1970 with the passage of the continuing criminal enterprise statute, 21 U.S.C. § 848, which was aimed at destroying major drug trafficking organizations. The statute contained an in personam criminal forfeiture provision designed to attack the economic base of drug organizations. 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 1.01, at 1-4 (1994). In 1978, Congress amended the act to permit the seizure and forfeiture of cash proceeds from illegal drug transactions. 21 U.S.C. § 881(a)(6). Civil forfeiture as a tool against drug trafficking did not come into wide use until 1984 with the passage of the Comprehensive Crime Control Act of 1984, in which, among other things, Congress authorized the seizure and forfeiture of real property. 21 U.S.C. § 881(a)(7).

---

[7]We make no distinction between the double jeopardy protections of the state and federal constitutions, having recently held those protections to be coextensive: The double jeopardy clause in "Const. art. 1, § 9 is given the same interpretation the Supreme Court gives to the Fifth Amendment." *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995).

In recent decisions, the United States Supreme Court has noted reservations about civil forfeiture "where the government has a direct pecuniary interest in the outcome of the proceeding," and where the government has a "financial stake in drug forfeiture." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S. Ct. 492, 502 & n.2, 126 L. Ed. 2d 490 (1993). Justice Thomas there expressed concern that the scope of the government's authority under 21 U.S.C. § 881(a)(7), which subjects to forfeiture all real property that is used, or intended to be used, in the commission, or even the facilitation, of a federal drug offense, posed a threat to private property rights, "rights that are central to our heritage." *Good*, 114 S. Ct. at 515 (Thomas, J., concurring in part, dissenting in part).[8] Subsequently, in *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993), the Court discarded the notion that civil forfeiture actions were directed against guilty objects, as opposed to persons. Declaring that forfeitures under 21 U.S.C. § 881(a)(4) and (7) are monetary punishment of the holder of the forfeited property, the Court held that such forfeitures are subject to the limitations of the excessive fines clause of the Eighth Amendment. *Austin*, 113 S. Ct. at 2804-12.

This court recently addressed the same issues in *State v. Clark*, 124 Wn.2d 90, 875 P.2d 613 (1994).[9] Pursuant to a search warrant, a search of the Clark premises revealed approximately 100 marijuana plants and a scale in the

---

[8]Other courts have expressed similar reservations about the application of civil forfeiture. *See, e.g., United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2d Cir. 1992) ("We continue to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes"); *United States v. One Parcel of Property Located at 508 Depot Street, Garretson, Minnehaha County*, 964 F.2d 814, 818 (8th Cir. 1992) ("[W]e are troubled by the government's view that *any* property, whether it be a hobo's hovel or the Empire State Building, can be seized by the government because the owner, regardless of his or her past criminal record, engages in a single drug transaction"), *rev'd sub nom. Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993).

[9]The Washington version of the federal statute, RCW 69.50.505(a)(8), permits the seizure and forfeiture of real property if the drug activity is a class C felony "and a substantial nexus exists between the commercial production or sale of

Clarks' garage and main residence; and, in the Clarks' motor home, a book on growing marijuana, a manual for a set of scales, and hollow beverage cans in which illegal drugs could be secreted. Based on this evidence, Robert Clark was charged with unlawful possession with intent to manufacture or deliver a controlled substance and with unlawful possession of a controlled substance. At the same time, Clallam County instituted a civil forfeiture action against the Clarks' home, motor home, and van. RCW 69.50.505(a)(4) (forfeiture of conveyances); RCW 69.50.505(a)(8) (real property). *Clark*, 124 Wn.2d at 95. The Clarks were found guilty in separate criminal trials and, in a third trial, their home and motor home, but not their van, were forfeited. *Clark*, 124 Wn.2d at 95.

We considered whether the forfeiture of the Clarks' home and motor home constituted a punishment that would have barred the forfeitures as violative of the double jeopardy clause, and concluded on the basis of *Austin* that the forfeitures were punishments. *Clark*, 124 Wn.2d at 96-101. These forfeitures, as punishments, would have implicated the double jeopardy prohibition had the Clarks successfully argued that their convictions amounted to the "same offense" for which their property was forfeit. The Clarks did not make this argument on appeal, however, and we affirmed the forfeitures. *Clark*, 124 Wn.2d at 101-02.

### 2. Civil Forfeiture of Proceeds of a Crime

■ Despite *Austin*, all civil forfeitures are not necessarily punishments. *Austin* dealt only with forfeiture of real property and forfeiture of conveyances. In *Clark*, we expressly limited the scope of our opinion:

> This holding is limited to the facts of this case. *We do not hold the forfeiture of property acquired through proceeds trace-*

the controlled substance and the real property." Forfeiture of real property is not an issue in the cases at bar.

For a useful history of civil forfeiture in Washington, see Jack F. Nevin, *Tellevik v. Real Property: Washington's Constitutional Dilemma*, 29 Gonz. L. Rev. 303 (1993/94) (asserting that the seizure of real property without preseizure notice is unconstitutional).

*able to a criminal violation to be "punishment" under the Fifth Amendment. See United States v. Tilley, 18 F.3d 295 (5th Cir. 1994) (civil forfeiture of proceeds from sale of drugs is not "punishment").*

(Emphasis ours.) *Clark,* 124 Wn.2d at 101. We now stand at the head of the trail we marked in *Clark,* and proceed down it directly to address the question of whether the forfeiture of proceeds traceable to a criminal violation constitutes punishment under the Fifth Amendment. We hold that it does not.

In *United States v. Tilley,* 18 F.3d 295 (5th Cir. 1994), *cited in Clark,* the court considered the double jeopardy claims of four defendants who had entered into a stipulated forfeiture agreement with the United States. The defendants agreed to forfeit significant amounts of cash, certificates of deposit, automobiles, and other personal property with a total value of approximately $650,000. Based on the stipulated agreements, the district court entered final judgment of forfeiture with respect to the personal property. *Tilley,* 18 F.3d at 297. The defendants subsequently filed a motion to dismiss the indictment against them on grounds that they were being subjected to multiple punishments for the same crimes in violation of the double jeopardy clause; they had already been "punished" for the same drug trafficking in the civil forfeiture proceeding. The district court rejected the argument and denied the motion. *Tilley,* 18 F.3d at 297.

On appeal, the *Tilley* court noted first that the "nature of the forfeiture proceeding may constitute punishment because it involves the extraction of lawfully derived property from the forfeiting party," but held that forfeiture of the proceeds of a drug transaction was not "punishment":

> When, however, the property taken by the government was not derived from lawful activities, the forfeiting party loses nothing to which the law ever entitled him. . . . [T]he forfeiture of approximately $650,000 of illegal proceeds does not punish the defendant because it exacts no price in liberty or lawfully derived property from him. The possessor of

proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity. . . . In short, the wrongdoer has nothing, at least nothing to which the law entitles him, to lose from the possible confiscation of the proceeds from his criminal trade. Thus, we believe the forfeiture of proceeds from illegal drug sales is more closely akin to the seizure of the proceeds from the robbery of a federal bank than the seizure of lawfully derived real property. . . . because, "[t]he money, though in [the defendant's] possession, is not rightfully his" . . . ; *see also Rex Trailer [Co. v. United States]*, 350 U.S. [148] at 153, 76 S. Ct. [219] at 222 n. 6 (stating that civil sanction may serve to avoid unjust enrichment). Consequently, instead of punishing the forfeiting party, the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme. This is not punishment "within the plain meaning of the word." *Halper*, 490 U.S. at 449, 109 S. Ct. at 1902.

(Citations omitted.) *Tilley*, 18 F.3d at 300.[10]

The Court of Appeals for the Ninth Circuit has adopted

---

[10]Most courts to have considered the issue have held the forfeiture of proceeds is not punishment: *E.g., United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir. 1994) ("Forfeiture of proceeds cannot be considered punishment, and, thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity"); *S.E.C. v. Bilzerian*, 29 F.3d 689, 696 (D.C. Cir. 1994) ("The district court ordered Bilzerian to give up only his ill-gotten gains; it did not subject him to an additional penalty. Therefore, the disgorgement does not constitute punishment") (citing *Tilley*); *District Attorney v. Iadarola*, 623 N.Y.S.2d 999, 1005 (N.Y. Sup. Ct. 1995) ("Taking away property in which a person has no possessory interest or no lawful ownership right is not punishment, but remedial. Such forfeiture merely removes property from an unlawful possessor/owner."); *United States v. All Assets & Equip. of West Side Bldg. Corp.*, 843 F. Supp. 377, 383 (N.D. Ill. 1993) ("If an item is a proceed of an illegal drug transaction, its forfeiture is exclusively remedial, as it cannot be considered punishment to take away something the claimant never legitimately owned. . . . *Austin* does apply to property used to facilitate illegal drug activities." (citations omitted.); *United States v. $288,930.00 in U.S. Currency*, 838 F. Supp. 367, 370 (N.D. Ill. 1993) ("In this case, the forfeiture of allegedly illegally obtained property is not a punishment because the claimant does not rightfully own the forfeited property."); *Idaho Dep't of Law Enforcement By and Through Cade v.*

a different view. In *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir. 1994), the court rejected the *Tilley* analysis, which focused on the property forfeited, and held, rather, that to "determine whether the forfeiture the government seeks to impose in these proceedings constitutes 'punishment,' we must focus on the characteristics of the forfeiture statutes on which it relies." *$405,089.23 U.S. Currency*, 33 F.3d at 1220. Thus, if the statute itself has the potential for exacting a punishment, then any act pursuant to the statute, according to the Ninth Circuit, must itself be a punishment.

We disagree. Neither the federal forfeiture statute nor our state forfeiture statute at issue here is self-executing. Even if the statute as it reads could lead to a punishment pursuant to the *Austin* analysis, unless the statute is applied so as to effect such a punishment, there obviously is no punishment. We hold that so long as the forfeited property is proceeds of an illegal drug transaction, there is no punishment for purposes of double jeopardy.[11]

### 3. Cole's Civil Forfeiture

The King County Sheriff filed a motion for order direct-

---

*Free*, 126 Idaho 422, 885 P.2d 381, 383 n.5 (1994) ("If an item is a proceed of an illegal drug transaction, its forfeiture is exclusively remedial and it cannot be considered punishment to take away something the claimant never legitimately owned."); *State v. Meister*, 866 S.W.2d 485, 490 (Mo. Ct. App. 1993) ("Forfeiture of the proceeds of the sale of contraband drugs is not a fine. Thus, such forfeiture is not punitive and the Eighth Amendment is inapplicable."); *Johnson v. Multiple Miscellaneous Items Numbered 1-424*, 523 N.W.2d 238, 241 (Minn. Ct. App. 1994) ("Keeping illegal goods out of the hands of those who cannot legally possess them 'is a goal plainly more remedial than punitive.' *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 364, 104 S. Ct. 1099, 1106, 79 L. Ed. 2d 361 (1984).").

[11]On May 30, 1995, the Ninth Circuit modified its decision in *$405,089.23 U.S. Currency*, at which time seven judges dissented from the court's decision not to rehear the case en banc. The dissent said, in part:

The panel held that the government could not convict a drug dealer of trafficking in drugs and then seek civil forfeiture of the proceeds of the illegal transactions. It reasoned that to do so "punishes"—or prosecutes—the dealer twice for the same offense and thus runs afoul of the Double Jeopardy Clause. The flip side of the panel's reasoning is that a drug dealer whose illegally obtained proceeds have previously been seized may not thereafter be prosecuted because he will already have been "punished." This cannot be right.

ing seizure of Cole's property on August 3, 1992. The motion requested an order specifically directing seizure of one 18-foot ski boat, one 1977 boat trailer, one 1991 Toyota 4Runner, and one 1992 Chevrolet Astro van. Appendices to Reply Br. of Appellant, App. B, Ex. A. In an 11-page affidavit, dated August 3, 1992, in support of the motion for the seizure order,[12] King County Police Officer/Detective Steve Tucker described his investigation into Cole's affairs. He noted Cole had claimed to be a parts clerk for a local company, but that company had reported no income for Cole through the Washington State Employment Security Department. Cole's neighbors told Tucker that Cole had lived at his residence for two and one-half years, paying rent of $1,600 a month. Tucker concluded that Cole's unexplained wealth, particularly the boat, trailer, and vehicles, came about because of drug trafficking. Aff. of Tucker at 8-11.

Judge Inveen of the King County Superior Court signed the order directing seizure on July 29, 1992, and the order was entered on August 3, 1992. The court concluded that the assets were proceeds within the meaning of RCW 69.50.505(a)(7). Order Directing Seizure, Appendices to Reply Br. of Appellant, App. B.

The parties subsequently entered an agreed order of forfeiture, settlement, and dismissal dated January 27, 1993, which acknowledged that the State's claim to the seized property rested on the assertion the property had been

---

The Supreme Court has held that the civil forfeiture of contraband is a remedial sanction that does not constitute punishment for double jeopardy purposes. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S. Ct. 1099, 79 L. Ed. 2d 361 (1984). Proceeds are the functional equivalent of contraband. Yet the panel's opinion writes *89 Firearms* off the books by taking one line in *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), and *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993), an *excessive fines* case, out of context and surmising that "the Court changed its collective mind" about *double jeopardy* — despite the fact that the Court itself didn't say that it had. This can't be right, either.

*United States v. $405,089.23 U.S. Currency*, 56 F.3d 41, 42 (9th Cir. 1995).

[12]Appendices to Reply Br. of Appellant, App. B.

acquired, in whole or in part, with proceeds traceable to an exchange in violation of RCW 69.50:

> Whereas one 1988 Chevrolet Truck, Oregon License #SHR343, Vehicle Identification Number (VIN) IGTHR33N9JJ501532; one 1990 Kawasaki Jet Ski, #WN4884RA, VIN #KA22273J99D; one 1990 Yamaha Jet Ski, #WN5380RA, VIN #YAMA04476090; and one Motorolla [sic] cellular telephone were seized by officers of the King County Department of Public Safety on or about 1 July 1992 because the officers had probable cause to believe those items of personal property *had been acquired in whole or in part with proceeds traceable to an exchange in violation of RCW 69.50.*

(Emphasis ours.) Clerk's Papers at 48.[13] The record reveals an additional reason for concluding the property Cole forfeited was proceeds.

RCW 69.50.505(c) requires a person be notified of the seizure of property to indicate an ownership or possessory interest in the property or it is forfeited. *Irwin v. Mount*, 47 Wn. App. 749, 753, 737 P.2d 277, *review denied*, 108 Wn.2d 1031 (1987). The agreed order indicated that Cole received notice of the seizure and participated in a hearing to determine his standing to claim an ownership interest in the seized property: "Michael E. Cole was found to be the only individual with standing to challenge the seizure/forfeiture of the 1990 Kawasaki Jet Ski, #WN4884RA, by the Honorable Edward Heavey on 17 December 1992." Clerk's Papers at 49. Cole evidently had no standing to challenge the other property that was ultimately forfeited, meaning he had no ownership or pos-

---

[13]The parties failed to provide the court with a complete record of the Cole forfeiture proceeding. It is noteworthy that a number of items forfeited in the trial court's August 3, 1992, order are changed without explanation in the January 27, 1993, agreed order. If parties wish to establish the character of property subject to forfeiture, they must generate and preserve an adequate trial court record.

sessory interest in it. He had standing to challenge only the forfeiture of the Kawasaki jet ski.[14]

■ Cole did not challenge the forfeiture of the Kawasaki jet ski, however. In the agreed order, he permitted the forfeiture of everything but the 1976 Sanger ski boat and the 1977 homemade boat trailer. These two items were returned to him. Cole explained that he did not contest the forfeiture of the Kawasaki jet ski because to do so would have been frivolous under CR 11:

> The fact that Mr. Cole settled the forfeiture matter without a contested hearing does not invalidate his claim that his prosecution is barred by double jeopardy. As a practical matter, Mr. Cole had no choice but to settle the forfeiture. *Had Mr. Cole pursued the forfeiture through an administrative hearing, having no good faith argument that the forfeiture provision of RCW 69.50.505 did not apply, he may have been subject to sanctions for a violation of Civil Rule 11.* Thus, if the State's argument is accepted, the only way for Mr. Cole to preserve his double jeopardy argument would be to file a frivolous claim for the return of his property, and pursue the matter through an administrative hearing. Mr. Cole should not have to file such a frivolous claim simply to preserve his constitutional right to avoid being placed in double jeopardy.

(Emphasis ours.) Appellant's Resp. to Supplemental Br. of Resp't at 3. It is not clear why Cole became concerned about the frivolity of a hearing only *after* he had both filed a written claim to the seized property and participated in a hearing to determine his standing to claim an ownership or possessory interest in it.[15] By admitting he had no good faith argument to the contrary, Cole has effectively conceded that the forfeited property was the

---

[14]Neither party has appealed the findings of the lower court with respect to Cole's standing to challenge the forfeiture of the seized property.

[15]*See infra* note 17. If Cole had simply defaulted in the forfeiture proceeding, he would not have had a viable double jeopardy claim. *See, e.g., United States v. Torres*, 28 F.3d 1463 (7th Cir. 1994) (holding that party who defaults in a civil forfeiture proceeding without making a claim to the forfeited property has not been placed in jeopardy, and cannot claim that a subsequent criminal prosecution is barred by double jeopardy).

proceeds of drug trafficking. As a result, we hold the forfeiture was not punishment. Cole's double jeopardy claim fails for lack of a former jeopardy.

4. Szymanowski's Civil Forfeiture

On January 5, 1993, the Washington State Patrol sent Szymanowski a letter notifying him of the State's intent to forfeit a 1978 Pontiac Firebird and $2,080 in cash it had seized "due to the fact that it was used in connection with an offense involving controlled substances in violation of RCW 69.50.505 and subject to forfeiture under that statute." Br. of Resp't App. A Attach A at 9 (Aff. of Linda Holmly). Szymanowski filed a notice of claim to the seized property on January 8, 1993, in which he declared his ownership interest in all property the Washington State Patrol had seized. Br. of Resp't App. A Attach. A at 8 (Aff. of Linda Holmly).

By letter of January 25, 1993, the Washington State Patrol turned the case over to the Attorney General, noting that Szymanowski had asked for a hearing regarding the forfeiture. In that letter, in addition to the Pontiac Firebird and the $2,080 in cash, the Washington State Patrol listed as property seized from Szymanowski and intended for forfeiture a 9-mm Baretta, a Titan .38 caliber pistol, a Whistler radar detector, a Telepage NW pager, and a Realistic scanner. Br. of Resp't App. A Attach. A at 5 (Aff. of Linda Holmly).

A hearing was set for April 8, 1993, before an administrative law judge. Br. of Resp't App. A Attach. A at 14 (Aff. of Linda Holmly). The case was settled without a hearing, and, on March 25, 1993, the administrative law judge entered an order pursuant to stipulation by the parties in which Szymanowski received the 1978 Pontiac Firebird and $200 of the $2,080 in cash that had been seized; he agreed to the forfeiture of all of the other property listed in the preceding paragraph.

█ The State says that Szymanowski forfeited only proceeds, arguing that the circumstances of his arrest "all support a reasonable inference that Szymanowski was

dealing in cocaine and that the money was proceeds of that dealing." Supplemental Br. of Resp't at 7. However reasonable the proposed inference may be, it falls considerably short of the factual finding this court needs to conclude the property Szymanowski forfeited was proceeds.[16]

Unlike the Cole situation, there was no affidavit by a law enforcement official prior to the seizure averring probable cause to believe that the property to be seized was proceeds, and no such finding by a judge. In fact, the trial court also remarked that there was nothing in the record to indicate that the State had intended to seize and forfeit proceeds. Report of Proceedings (S) II at 27. The record would require us to speculate that the assets seized from Szymanowski were proceeds. We decline to do so. On this record, we cannot say the forfeited assets were the proceeds of illegal drug transactions.[17] We remand Szymanowski's case to the trial court for the court to characterize the property seized and forfeited from Szy-

---

[16]Once again, we note for future parties that if they intend to make arguments as to the character of the items of the property seized and/or forfeited, they must develop an adequate record for appellate courts to review. Findings of fact by an appropriate tribunal are essential.

[17]Although we cannot tell from the record whether the property Szymanowski forfeited was proceeds, Szymanowski stated on appeal why he settled the forfeiture action rather than litigating his claim to the property in a forfeiture hearing:

The fact that Mr. Szymanowski settled the forfeiture matter without a contested hearing does not invalidate his claim that his prosecution is barred by double jeopardy. As a practical matter, Mr. Szymanowski had no choice but to settle the forfeiture. *Had Mr. Szymanowski pursued the forfeiture through an administrative hearing, having no good faith argument that the forfeiture provision of RCW 69.50.505 did not apply, he may have been subject to sanctions for a violation of Civil Rule 11.* Thus, if the State's argument is accepted, the only way for Mr. Szymanowski to preserve his double jeopardy argument would be to file a frivolous claim for the return of his property, and pursue the matter through an administrative hearing. Mr. Szymanowski should not have to file such a frivolous claim simply to preserve his constitutional right to avoid being placed in double jeopardy.

(Emphasis ours.) Reply Br. of Appellant (Szymanowski) at 12. The trial judge may have shed some light on the reason Szymanowski settled the forfeiture action when she used the word "positioning" during the sentencing hearing of September 23, 1993, to describe the settlement. Report of Proceedings (S) II at 20.

manowski. We decline to decide the double jeopardy issues Szymanowski raises in the absence of the trial court's characterization of the forfeited property.[18]

### Search Warrant in *State v. Cole*[19]

Cole contends that the redacted affidavit in support of

---

[18]The court does not need to reach the double jeopardy question in Szymanowski's case at this time, but we do not concede that double jeopardy under the "same elements" test employed by this court in *State v. Clark*, 124 Wn.2d 90, 875 P.2d 613 (1994), and *State v. Gocken*, 127 Wn.2d 95, 102, 896 P.2d 1267 (1995), based on *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), is violated in Szymanowski's case. The *Blockburger* test, also called the "same elements" test, examines whether each offense contains an element not contained in the other:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Under this test, if there is one element of the offense that is not present in the other offenses, then the offenses are not the same offense.

As we said in *Gocken*, "The *Blockburger* test, with its emphasis on statutory elements, is simple and objective; and it provides courts, defendants, and prosecutors with certainty as to which offenses are the same for double jeopardy purposes." *Gocken*, 127 Wn.2d at 107.

A comparison of the elements of possession with intent to deliver a controlled substance with the offense underlying civil forfeiture pursuant to RCW 69.50.505(a)(7) indicates each offense contains at least one element not contained in the other. Possession with intent to deliver under RCW 69.50.401(a) requires proof of the following elements not required for civil forfeiture: the identity of the defendant, intent to deliver a controlled substance, and the nature of the substance to be delivered. *State v. Thomson*, 70 Wn. App. 200, 211, 852 P.2d 1104 (1993), *aff'd*, 123 Wn.2d 877, 872 P.2d 1097 (1994); *State v. Brown*, 68 Wn. App. 480, 483-84, 843 P.2d 1098 (1993); *State v. Eddie A.*, 40 Wn. App. 717, 719, 700 P.2d 751 (1985). Civil forfeiture of personal property under RCW 69.50.505(a)(7) requires proof of either intent to use such property to facilitate the commission of a drug offense, or use of such property to facilitate commission of a drug offense. *State v. Michel*, 55 Wn. App. 841, 844, 781 P.2d 496 (1989); *In re Forfeiture of One 1980 Porsche*, 54 Wn. App. 498, 502, 774 P.2d 528 (1989). Neither is an element that must be proved for possession with intent to manufacture or deliver under RCW 69.50.401(a). Each offense thus contains an element not contained in the other.

While civil forfeiture of property other than proceeds is a punishment, the criminal conviction and the civil forfeiture here, as defined in RCW 69.50.401(a)(1)(i) and RCW 69.50.505(a)(7), were not the same offense as the elements of those two statutory offenses are plainly not identical.

[19]Szymanowski does not raise questions regarding the search warrants in his case.

the search warrant for his residence was insufficient to establish probable cause to believe a marijuana grow operation would be found within the residence. Cole contends the affidavit in support of the search warrant contained information that should have been redacted further: (a) allegations made by a citizen informant; (b) statements based on Hall's asserted ability to identify the odor of growing marijuana; and (c) information about power consumption obtained without following the procedures in RCW 42.17.314.

A search warrant may issue only upon a determination of probable cause, based upon facts and circumstances sufficient to establish a reasonable inference that criminal activity is occurring or that contraband exists at a certain location. *State v. Smith*, 93 Wn.2d 329, 352, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980); *State v. Patterson*, 83 Wn.2d 49, 58, 515 P.2d 496 (1973). Probable cause exists when an affidavit supporting a search warrant sets forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994); *State v. Maxwell*, 114 Wn.2d 761, 769, 791 P.2d 223 (1990). Facts that, standing alone, would not support probable cause can do so when viewed together with other facts. *State v. Garcia*, 63 Wn. App. 868, 875, 824 P.2d 1220 (1992).

A magistrate's determination that a warrant should issue is an exercise of judicial discretion that is reviewed for abuse of discretion. *State v. Rembolt*, 64 Wn. App. 505, 509, 827 P.2d 282, *review denied*, 119 Wn.2d 1005 (1992). This determination generally should be given great deference by a reviewing court. *Young*, 123 Wn.2d at 195; *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981). An application for a search warrant should be judged in the light of common sense with doubts resolved in favor of the warrant. *Young*, 123 Wn.2d at 195; *State v. Partin*, 88 Wn.2d 899, 904, 567 P.2d 1136 (1977).

1. Anonymous Citizen Informant

Cole claims the trial court erred in finding prob-

able cause based on unreliable allegations made by an anonymous informant. He claims the affidavit's statement as to the informant's reliability is a "generic recitation," insufficient to demonstrate reliability. Br. of Appellant (Cole) at 16. Washington courts adhere to the so-called *Aguilar-Spinelli* test: "[W]hen the existence of probable cause depends on an informant's tip, the affidavit in support of the warrant must establish the basis of the informant's information as well as the credibility of the informant." *State v. Ibarra*, 61 Wn. App. 695, 698, 812 P.2d 114 (1991) (citing *State v. Jackson*, 102 Wn.2d 432, 433, 688 P.2d 136 (1984); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. State of Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)). Generally, both prongs of the test must be present to establish probable cause. *Jackson*, 102 Wn.2d at 437; *Ibarra*, 61 Wn. App. at 698. If one prong is not satisfied, however, independent police investigation that corroborates the tip can form the basis for probable cause. *Maxwell*, 114 Wn.2d at 769; *Jackson*, 102 Wn.2d at 445; *State v. Sterling*, 43 Wn. App. 846, 850, 719 P.2d 1357, *review denied*, 106 Wn.2d 1017 (1986). More than public or innocuous facts must be corroborated. *Young*, 123 Wn.2d at 195; *Jackson*, 102 Wn.2d at 448.

Different rules apply to establish the credibility of a confidential informant depending on whether the informant is a professional informant or a private citizen. *Ibarra*, 61 Wn. App. at 699. In either instance, when the informant's identity is unknown to the magistrate, there exists concern that the information may be coming from an "anonymous troublemaker." *Ibarra*, 61 Wn. App. at 699-70. That concern is substantially decreased, however, where information in the affidavit demonstrates the informant is truly a citizen informant who is not involved in the criminal activity or motivated by self-interest. *Ibarra*, 61 Wn. App. at 700. Consequently, if a citizen informant wishes to remain anonymous, the affidavit must contain background facts to support a reasonable infer-

ence that the information is credible and without motive to falsify. *State v. Wilke*, 55 Wn. App. 470, 477, 778 P.2d 1054, *review denied*, 113 Wn.2d 1032 (1989). If the informant's identity is known to the police, but not to the magistrate, the informant may be credible even though the affidavit does not state specifically why the informant wishes to remain anonymous. *State v. Dobyns*, 55 Wn. App. 609, 619, 779 P.2d 746, *review denied*, 113 Wn.2d 1029 (1989).

In this case, the Gaddy affidavit included the following facts about the informant: (1) the informant lived in the neighborhood of the house that was the subject of the requested search; (2) the informant lived in that neighborhood for several years; (3) the informant worked in the community; (4) the informant had extended family who lived in the community; (5) the informant did not have a criminal record; (6) the informant came forward voluntarily; (7) the informant did not request compensation; and (8) Gaddy knew the informant's identity. Clerk's Papers at 75. According to the affidavit, the informant's information was quite specific, describing appearances of automobiles and persons, their activities, and even the license plate numbers of the vehicles. Clerk's Papers at 75, 77. The affidavit also described subsequent investigation by police officers that corroborated the information given by the informant, including the suspicious appearance of the residence, a pattern of visitation to the residence consistent with drug-related activities, and a link between the vehicles reported by the informant and observed by officers and persons with prior convictions for narcotics violations. Clerk's Papers at 75-80.

We believe that the recitation here was more complete and provides greater validation than the factual allegations in *Ibarra* and *State v. Franklin*, 49 Wn. App. 106, 741 P.2d 83, *review denied*, 109 Wn.2d 1018 (1987), that were found to be insufficient, and was more in the nature of the information provided about the informant in *Dobyns*. The information here is sufficient to support an inference of reliability, thereby satisfying the concerns

raised in *Ibarra*. Relying on the informant's allegations to find probable cause was consistent with *Dobyns* and was not an abuse of discretion.

## 2. Smell of Growing Marijuana

██ Cole contends the trial court erred in finding probable cause based on the affidavit's assertion that Hall smelled growing marijuana on the suspect property. Cole argues the affidavit did not contain information sufficient to demonstrate Hall had the necessary skill, training, or experience to identify the odor of growing marijuana. The affidavit states Hall had been a King County Police Officer for over two years, had been involved with marijuana grow operations in that time, and was familiar with the smell of growing marijuana. *State v. Olson*, 73 Wn. App. 348, 869 P.2d 110, *review denied*, 124 Wn.2d 1029 (1994) is on point. The court held as sufficient an affidavit's statement that a state patrol detective was familiar with the odor of growing marijuana and had participated in the seizure of indoor grows. *Olson*, 73 Wn. App. at 356. Acknowledging that such an assertion must be based on more than a mere statement of personal belief, the *Olson* court held a statement that an officer with training and experience actually detected the odor of marijuana provides sufficient evidence, by itself, constituting probable cause to justify a search. *Olson*, 73 Wn. App. at 356 (citing *State v. Huff*, 64 Wn. App. 641, 647-48, 826 P.2d 698, *review denied*, 119 Wn.2d 1007 (1992)). Gaddy's affidavit adequately sets forth Hall's training and experience; the trial court did not abuse its discretion in finding probable cause.

## 3. Power Records Obtained with a Search Warrant

Cole also argues the search warrant Gaddy obtained for power consumption records of Puget Sound Power and Light Company does not comply with the procedures in RCW 42.17.314, which provide that power records may not be disclosed unless law enforcement provides a written statement to the utility that a crime may have been committed by the person to whom the records pertain and the records are relevant to the alleged crime. Relying pri-

marily on *State v. Maxwell*, 114 Wn.2d 761, 791 P.2d 223 (1990) to support his contention that RCW 42.17.314 provides the exclusive means through which police can obtain power consumption records, Cole argues that the records were inadmissible to show probable cause. Cole's reliance is misplaced. *Maxwell* held only that a police officer's telephone request did not satisfy the statute's requirement that the request be made in writing. *Maxwell*, 114 Wn.2d at 768. In contrast, the officers in this case presented the utility with a search warrant stating that a judge had determined, based upon a sworn affidavit, that there was sufficient probable cause to believe a violation of the Uniform Controlled Substances Act had been committed by a person or persons who had contracted for service at a particular address, and that evidence of that violation existed in the utility's records for that address.

■ The search warrant here satisfied the requirements of RCW 42.17.314 because the statute requires only that the police indicate in writing an articulable suspicion of illegal activity. A search warrant requires the critical additional step of proving to an impartial magistrate that there is probable cause to believe a crime has been committed.

Allowing power consumption records to be obtained by means of a search warrant also satisfies the policy underlying RCW 42.17.314. The concern of the Legislature in enacting RCW 42.17.314 was to prevent general fishing expeditions by governmental authorities through power usage records. *State v. Maxfield*, 125 Wn.2d 378, 392-93, 886 P.2d 123 (1994). It is not a fishing expedition when a law enforcement officer demonstrates both reasonable suspicion of criminal activity and an inference that particular evidence of that offense is located in a particular place, sufficient to persuade an impartial magistrate that there is probable cause to issue a search warrant. *See State v. Ludvik*, 40 Wn. App. 257, 264-65, 698 P.2d 1064 (1985). Cole cannot show any prejudice where the State obtained the records in a proceeding that had a more *stringent* standard for disclosure than RCW 42.17.314.

The affidavit supporting the search warrant for Cole's residence stated there was "extremely high" power consumption "averaging approximately 7,000 KWH per two month billing period," compared with about 1,900 KWH per previous billing periods. Cole contends there are many legitimate explanations for high power consumption, so that this information does not tend to establish probable cause.

While an increase in electrical consumption by itself does not constitute probable cause to issue a search warrant, the increase, when combined with the other suspicious facts, is a proper factor in determining whether probable cause exists. *Sterling*, 43 Wn. App. at 851-52. In this case, the affidavit for a search warrant contained numerous other suspicious facts, including information provided by the anonymous informant corroborated by independent police investigation; identification of particular suspects with prior narcotics convictions; a fictitious name and social security number given to the utility by the subscriber for service at the suspect residence; and the appearance and condition of the suspect residence (overgrown yard and unlived-in appearance, interior and exterior lights on during the day, basement windows covered, a new metal vent on the roof, the odor of marijuana, the sound of electric motors running in the garage). Clerk's Papers at 75-80. The trial court properly concluded power consumption was simply one factor among many that together justified issuance of the search warrant. Clerk's Papers at 70 (conclusion of law 2).

In conclusion, the informant testimony and Officer Hall's olfactory skill amply supported the search warrant for the suspect residence. The State did not violate RCW 42.17.314 by obtaining power consumption records with a search warrant. The trial court did not abuse its discretion in denying Cole's motion to suppress.

CONCLUSION

As we noted at the outset of this opinion, civil forfeiture

is a powerful and effective tool in the war on drugs. The combination of civil forfeiture with criminal proceedings has resulted in an explosion of double jeopardy litigation. The simplest way to address this issue was advanced by the United States District Court in *United States v. McCaslin*, 863 F. Supp. 1299, 1307 (W.D. Wash. 1994): combine the civil forfeiture action in the same proceeding as the criminal case. Multiple punishments for the same offense are permissible so long as they occur in the same proceeding. *Missouri v. Hunter*, 459 U.S. 359, 368-69, 103 S. Ct. 673, 679-80, 74 L. Ed. 2d 535 (1983) (where a legislature specifically authorizes cumulative punishment, regardless of whether the same offense underlies both punishments, a prosecutor may seek cumulative punishment under such statutes in a single trial); *United States v. Millan*, 2 F.3d 17 (2d Cir. 1993) (because civil forfeiture action was part of single coordinated prosecution, criminal prosecution for underlying drug offenses was not barred by federal double jeopardy clause), *cert. denied sub nom. Bottone v. United States*, 510 U.S. 1092, 114 S. Ct. 922, 127 L. Ed. 2d 215 (1994).

Unfortunately, under Washington's civil forfeiture statute, unless the defendant agrees to have his or her forfeiture hearing occur before the court conducting the criminal trial, there is presently no statutory way for prosecutors to bring the civil forfeiture action in the same proceeding as the criminal case. The Legislature may wish to remedy this situation.

We hold in the present cases that as to Cole, there was probable cause to issue a search warrant in his case. Jeopardy did not attach in the civil forfeiture proceedings involving Cole because the assets forfeited were the proceeds of illegal drug transactions. Forfeiture of the proceeds of a crime is not punishment for purposes of the Fifth Amendment. Because we cannot determine on this record that the forfeiture in Szymanowski's case was of proceeds, we remand his case to the trial court for a determination of the property forfeited. We affirm the conviction of Cole.

DOLLIVER and SMITH, JJ., concur.

ALEXANDER, J. (concurring in part, dissenting in part) — I agree with the majority that Cole's conviction should be affirmed. I do so because the trial court found that the property that was forfeited in the forfeiture proceeding to which Cole was a party was proceeds of drug trafficking. The forfeiture, therefore, cannot be considered punishment. In that regard, I find myself in accord with the many decisions cited by the majority to the effect that it is not punishment to take something away from a claimant which he or she never legitimately acquired.

Insofar as *State v. Szymanowski* is concerned, I do not disagree with the majority's decision that we should remand to the trial court for a determination as to the nature of the property forfeited. I write separately, however, because I would have us go further and direct the trial court to vacate Szymanowski's conviction and dismiss the underlying charges, in the event it concludes on remand that the forfeited property was not proceeds of drug trafficking. I am so inclined because I am satisfied that a conviction on criminal charges that follows a forfeiture action constitutes a second punishment for the same offense. In that respect, I agree with the view expressed by Justice Johnson in his dissent that the forfeiture of Szymanowski's property, if not shown to be proceeds of criminal activity, was punishment. A separate criminal proceeding following the forfeiture proceeding would, therefore, be subsequent punishment and would run afoul of the double jeopardy provisions of the federal and state constitutions. We should so hold.

DURHAM, C.J., and MADSEN, J., concur with ALEXANDER, J.

JOHNSON, J. (dissenting) — These two cases are resolved by application of recent controlling precedent, that established in *Austin v. United States*, 509 U.S. 602, 113

S. Ct. 2801, 125 L. Ed. 2d 488 (1993), followed by this court in *State v. Clark*, 124 Wn.2d 90, 875 P.2d 613 (1994) and *State v. Gocken*, 127 Wn.2d 95, 896 P.2d 1267 (1995). The majority reaches the wrong result by incorrectly applying the analysis required by these cases. Proper application of *Austin, Clark*, and *Gocken* leads to the inescapable conclusion that the Petitioners' forfeitures constitute punishment for the same offense for which they were also criminally prosecuted, thereby subjecting Petitioners Cole and Szymanowski to double jeopardy in violation of the Fifth Amendment of the United States Constitution.

The double jeopardy clause protects against a second prosecution for the same offense and against multiple punishments for the same offense imposed in separate proceedings. *United States v. Halper*, 490 U.S. 435, 440, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). Accordingly, double jeopardy analysis in these cases involves three inquiries: (a) whether the forfeitures at issue constituted "punishment"; and, if so, (b) whether the forfeiture and criminal proceedings against each Petitioner constituted separate "proceedings" (c) arising from the "same offense." *Halper*, 490 U.S. at 440; *Pearce*, 395 U.S. at 717.

There is no dispute the civil forfeiture and criminal prosecution of each Petitioner constituted separate proceedings. As to punishment, the majority concludes Petitioner Cole was not punished by the forfeiture proceedings because he forfeited only proceeds of criminal activity. Because the majority misunderstands the analysis required of us by *Austin*, I dissent from the majority's analysis and conclusion regarding punishment.

With respect to Petitioner Szymanowski, the majority remands for a factual determination as to whether the items forfeited were proceeds of criminal activity. In the event the superior court determines Szymanowski's forfeiture was not criminal proceeds, it must then decide whether or not Szymanowski was prosecuted for the same

offense as the civil forfeiture. The majority's decision fails to give the superior court any guidance on this issue. This is the proper case for this court to address this issue under the "same elements" test of *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which we adopted in *Gocken*, 127 Wn.2d at 100-01.

The majority examines the punitive effect of RCW 69.50.505(a)(7) as applied in an individual case. Majority at 280. So long as the forfeited property or assets are proceeds of an illegal drug transaction, the majority would find no punishment for purposes of double jeopardy. This is the wrong approach and is contrary to the analysis set forth in *Austin*. The *Austin* Court, reviewing the legislative and common law history of forfeiture, found "that forfeiture generally and statutory in rem forfeiture in particular historically have been understood, at least in part, as punishment." *Austin*, 113 S. Ct. at 2810. The Court also found the federal civil forfeiture statute at issue allowed for forfeiture of property varying so dramatically in value "that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Austin*, 113 S. Ct. at 2812 n.14. Based on these findings, the Court explicitly concluded the federal civil forfeiture statute before it must be examined *as a whole. Austin*, 113 S. Ct. at 2812 n.14. *See also United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1220 (1994) (under *Austin*, any determination whether a forfeiture constitutes punishment must look to the requirements of the forfeiture statute as a whole, not simply whether the particular forfeiture is excessive in relation to any remedial goal).

The Supreme Court in *Austin* requires us to determine whether a forfeiture is punitive by looking at the requirements of RCW 69.50.505(a)(7) in its entirety to determine whether it serves solely a remedial purpose. *Austin*, 113 S. Ct. at 2812. We may not simply look at how the statute has been applied in a particular case. Upon examination of the entire statute, it cannot fairly be said solely to serve

a remedial purpose. Like the statute at issue in *Austin*, RCW 69.50.505(a)(7)[20] requires a criminal drug violation and contains an innocent owner exemption, both indicating a legislative intent to impose a penalty only upon those who are guilty of drug related offenses. Like the statute before the *Austin* Court, our civil forfeiture statute allows police officers to seize and forfeit property and assets without regard to any correlation between their value and the damages sustained by society or the cost of enforcing the law. *Austin*, 113 S. Ct. at 2812.

Even assuming the forfeiture of criminal proceeds is remedial, the scope of RCW 69.50.505(a)(7) is not limited to proceeds traceable to criminal activity. Rather, three distinct categories of property and assets are subject to forfeiture under the statute: (a) personal property and assets "furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this chapter or chapter 69.41 or 69.52 RCW"; (b) personal property and assets "acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of this chapter or chapter 69.41 or 69.52 RCW"; and (c) certain assets "used or intended to be used to facilitate any violation of this chapter or chapter 69.41 or 69.52

---

[20]RCW 69.50.505(a) reads as follows, in pertinent part:

"(a) The following are subject to seizure and forfeiture and no property right exists in them:

". . . .

"(7) All moneys, negotiable instruments, securities, or other tangible or intangible property of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this chapter or chapter 69.41 or 69.52 RCW, all tangible or intangible personal property, proceeds, or assets acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of this chapter or chapter 69.41 or 69.52 RCW, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this chapter or chapter 69.41 or 69.52 RCW. A forfeiture of money, negotiable instruments, securities, or other tangible or intangible property encumbered by a bona fide security interest is subject to the interest of the secured party if, at the time the security interest was created, the secured party neither had knowledge of nor consented to the act or omission. No personal property may be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission which that owner establishes was committed or omitted without the owner's knowledge or consent[.]"

RCW." RCW 69.50.505(a)(7). Only the second category involves proceeds. Because RCW 69.50.505(a)(7) allows personal property and assets to be seized and forfeited even if the property and assets clearly are not proceeds of a drug related crime, it does not serve *solely* a remedial purpose. Accordingly, a forfeiture under RCW 69.50.505-(a)(7), the statute at issue here, must be considered punishment under *Austin*, 113 S. Ct. at 2812 and *Halper*, 490 U.S. at 448.

This result is consistent with our analysis and conclusion in *Clark*. In that case, following the analysis of *Austin* and *Halper*, we examined the entirety of RCW 69.50-.505(a)(8) and (4) to determine whether they served solely a remedial purpose. Finding a deterrent purpose on their face, we held forfeiture under RCW 69.50.505(a)(8) and (4) to constitute punishment. *Clark*, 124 Wn.2d at 97-101. Similarly, because RCW 69.50.505(a)(7) "cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes," civil forfeiture pursuant to RCW 69.50.505(a)(7) is punishment subject to double jeopardy protections. *Austin*, 113 S. Ct. at 2812 (quoting *Halper*, 490 U.S. at 448). The majority errs by answering the wrong question.

The majority remands *Szymanowski* to determine whether the property seized and forfeited was the proceeds of criminal activity. Under the majority approach, what happens next is unclear. If the superior court determines the forfeiture was criminal proceeds, then presumably the majority would affirm his conviction, and as stated above, I disagree. However, if the superior court determines the forfeiture was not of criminal proceeds, there remains the question of whether the forfeiture proceeding was for the same offense as the criminal proceeding. This is a question of public importance and the case requires this court to address this issue in order to provide guidance for our lower courts. If the trial court finds these were not proceeds, I would find the forfeiture proceeding was for the same offense as the criminal proceeding.

To determine whether civil forfeiture constitutes the same offense as that for which Szymanowski was convicted, the *Blockburger* test requires us to determine whether each offense requires proof of a fact the other does not. *Blockburger*, 284 U.S. at 304; *Gocken*, 127 Wn.2d at 101. Szymanowski was convicted of possession with intent to deliver cocaine, a violation of RCW 69.50.401(a). RCW 69.50.505(a)(7), under which his personal property and assets were forfeited, requires a violation or intended violation of either RCW 69.41, 69.50, or 69.52:

> All moneys, negotiable instruments, securities, or other tangible or intangible property of value *furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this chapter or chapter 69.41 or 69.52 RCW*, all tangible or intangible personal property, proceeds, or assets *acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of this chapter or chapter 69.41 or 69.52 RCW*, and all moneys, negotiable instruments, and securities used or intended to be *used to facilitate any violation of this chapter or chapter 69.41 or 69.52 RCW.*

(Italics mine.) RCW 69.50.505(a)(7). The existence of an actual or intended criminal offense thus is an element of civil forfeiture, and the elements of the criminal offense are imported into RCW 69.50.505(a)(7).

Szymanowski's position is similar to that of the defendant in *Oakes v. United States*, 872 F. Supp. 817 (E.D. Wash. 1994). In *Oakes*, the government initiated civil forfeiture proceedings against the defendant, then separately filed a criminal indictment for a marijuana growing operation. The court, applying the *Blockburger* test, held the federal civil forfeiture statute for drug related offenses to be premised upon a violation of the controlled substances statutes:

> Any forfeiture under section 881(a)(7), therefore, requires a preceding violation of the controlled substance statutes. Thus, the Government could not have attempted to take [the defendant's] home had [he] not manufactured marijuana on

the premises. To accept the Government's argument that the sections involve different elements simply because one section of the statute deals with property and the other people, would be to adopt a circular and illusory theory.

The civil forfeiture action and the Petitioner's criminal prosecution addressed the identical violation of the identical laws; the only difference between the proceedings was the remedy sought by the Government. . . . In fact, the Government would have had no remedy in the civil forfeiture action had it not been able to prove "a violation of this subchapter," *i.e.*, section 841(a)(1). In short, the forfeiture statute subsumes all of section 841(a)(1) and, therefore, renders the criminal conviction and the civil forfeiture the "same offense" as defined by *Blockburger*.

(Citation omitted.) *Oakes*, 872 F. Supp. at 824. *Accord United States v. McCaslin*, 863 F. Supp. 1299, 1303 (W.D. Wash. 1994) ("To obtain forfeiture the government had to prove that the property was used 'to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment. . . .' 21 U.S.C. § 881(a)(7). The offenses relied upon for the forfeiture were the same ones that appeared in the indictment."). The courts in *Oakes* and *McCaslin* each vacated a criminal prosecution following civil forfeiture on double jeopardy grounds. Although we are not bound to follow these cases, recent federal decisions analyzing the same issue should be persuasive.

Petitioner Szymanowski faces the same situation as the defendants in *Oakes* and *McCaslin*. Because civil forfeiture requires the existence of a criminal violation, there is no element in RCW 69.50.401(a) that is not also present in RCW 69.50.505(a)(7). Under the *Blockburger* test, Szymanowski was criminally prosecuted for the same offense for which he was punished by civil forfeiture. Jeopardy attached to the completed civil penalty proceedings, thus barring subsequent criminal prosecution. *See United States v. Tamez*, 881 F. Supp. 460, 465-66 (E.D. Wash. 1995) (jeopardy attaches to a civil forfeiture proceeding when

the court enters its final judgment of forfeiture); *United States v. Stanwood,* 872 F. Supp. 791, 798-800 (D. Or. 1994).

I would reverse the convictions of both Cole and Szymanowski on double jeopardy grounds because (1) RCW 69.50.505(a)(7) does not solely serve a remedial purpose as required by *Austin,* and (2) the civil forfeiture and criminal prosecution were the same offense. Prosecutors can avoid this dilemma by seeking imprisonment, fines, and forfeiture in one proceeding, as apparently is becoming the practice under federal forfeiture statutes. *See, e.g., McCaslin,* 863 F. Supp. at 1307. The government can easily avoid double jeopardy concerns by seeking forfeiture of the defendant's property in the criminal case, while maintaining a civil cause in rem to extinguish the claims of persons who are not criminally charged.

GUY, J., and UTTER, J. Pro Tem., concur with JOHNSON, J.

Reconsideration denied February 22, 1996.