[No. 21337-7-I.   Division One.   August 21, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. THEODORE
ARTHUR DOBYNS, *Appellant.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Susan Grey* and *Todd S. DeGroff, Deputies,* for respondent.

SCHOLFIELD, J.—Theodore Dobyns appeals his conviction for misdemeanor possession of marijuana. We affirm.

## FACTS

Dobyns was charged with two counts of possession of marijuana with intent to deliver, contrary to RCW 69.50-.401(a). The two counts arose from the execution of two separate search warrants. Count 1 concerned a dwelling located at 6504 Phinney Avenue N., in Seattle; count 2

concerned a residence located at 4728 21st Avenue N.E., also in Seattle.

Seattle police officers obtained a search warrant for the Phinney Avenue address on February 5, 1987, and for the 21st Avenue N.E. address on February 6, 1987. They conducted first the Phinney Avenue search, and then the 21st Avenue N.E. search.[1] The affidavit for the warrant for the Phinney Avenue address stated that the police had been contacted by an individual who wished to report the location of a marijuana "[g]row [f]arm", at 6504 Phinney Avenue N. The individual indicated that he/she wished to remain anonymous, but he/she took the police officer to the Phinney Avenue address, and stated that the "[g]row [f]arm" was located in the basement.

The search warrant further indicated that the informant told the officer that the primary occupant of the premises was Ted Dobyns, a white male, approximately 36 years old, 5 feet 11 inches, 150 pounds, and that Dobyns was married to a Japanese female, drove a Subaru automobile, and kept two Akita dogs for protection. The informant stated that he/she was last in the premises in mid or late December of 1986.

The informant described Dobyns' operation as a "continuous [m]arijuana [g]row [f]arm," meaning that it contained marijuana in all stages of growth. In addition, the informant stated that the premises contained halide lights and transformers, intake/exhaust fans, and fluorescent lights. According to the informant, the basement was vented on the north side, and if observed at night, a bright light could be seen coming from an east window. The informant identified halide/fluorescent lighting systems and marijuana in various stages of cultivation, using a marijuana growers' handbook provided by the officer. The officer/affiant stated

---

[1]At trial, the jury found Dobyns not guilty on count 2, relating to the 21st Avenue N.E. address. Thus, any issues concerning that count are not before us in this appeal.

in the affidavit that under ideal conditions, marijuana plants mature in 4 months.

The affidavit indicated that the officer went to 6504 Phinney Avenue N. and observed a Subaru automobile parked there. The car was found to be registered to Ted Dobyns and Hitomi Fukunaga. The officer also observed two dogs running in the backyard of the house. A Seattle Police Department check described Ted Dobyns as a white male, birthdate July 7, 1950, 6 feet 1 inch, and 160 pounds. According to the officer/affiant, an intake/exhaust vent was located on the north side of the premises, and after dark a bright light shone from a sealed/covered window on the east side of the basement.

The officer/affiant requested power use records from Seattle City Light for the premises. The account was in the name of Hitomi Fukunaga, and the records revealed that for the billing period ending December 12, 1986, there was an increase of 5,543 kilowatts over the previous year, and that the building was not heated by electricity.

The affidavit for probable cause went on to state that the citizen informant did not request monetary compensation for disclosure of the information, had no prior criminal record, and was motivated solely by his/her interest in justice. Based on the officer/affiant's extensive prior narcotics experience, he stated in the affidavit that he had reason to believe that marijuana was being grown in the residence, and therefore, requested a search warrant.

No one was present at the Phinney Avenue house during the search, and a copy of the warrant return was left there. The officers seized 11 transformers, 13 timers, 6 halide lights, 3 filter systems, several fans, a scale, and 7 small marijuana "starter" plants.[2] In the search, the officers obtained a bill from a ceramics supply store in California, mailed to Ted Dobyns in care of T. Dobyns Art Products, with a street address of "6504 Phinney Ridge [sic]."

---

[2]Testimony at trial by Dr. Suzuki of the Washington State Crime Laboratory indicated that the seven plants consisted of 3.8 grams of marijuana.

Exhibit 26. The bill was tacked onto a bulletin board in a small bedroom. One of the officers also obtained a business card in the kitchen of the Phinney Avenue premises. The card read, "The Filter Works", "Creating the Future Now with the Finest Anti–Pollution Devices". Exhibit 46. The card carried the name of "Ted A. Dobyns", and listed two phone numbers. Phone company records indicated that one number was for the Phinney Avenue address, listed in Dobyns' name, for a business called "Equity Bronze & Burl".

Prior to trial, Dobyns made a motion to suppress evidence seized. Dobyns argued that the supporting affidavit failed to establish either the basis of knowledge prong or the reliability prong of the test to uphold a search warrant. After argument, the motion to suppress was denied.

Dobyns also sought to have the court reveal the identity of the confidential informant. Dobyns argued that he wished to put the informant on the witness stand to question him/her regarding alleged knowledge of Dobyns' marijuana growing operation. Dobyns argued that the testimony would elicit inconsistent statements. The trial court denied this motion as well.

During the CrR 3.5 hearing just before trial, the police revealed that they executed *three* search warrants on February 6, 1987, as a result of the informant's information. Defense counsel requested discovery of the third warrant and affidavit. The State resisted the motion, arguing that the third warrant was not connected to Dobyns in any way, and that discovery of the third warrant might lead to revealing the identity of the informant. The trial court reviewed the third search warrant and accompanying affidavit and determined that there was nothing in them that would be exculpatory or useful to Dobyns' defense. The trial court sealed the file for appellate review.

On count 1 (Phinney Avenue) the jury returned a verdict of guilty on the lesser misdemeanor offense of possession of less than 40 grams of marijuana. This appeal timely followed.

### SUFFICIENCY OF THE EVIDENCE

■ A challenge to the sufficiency of the evidence to convict cannot be sustained if, considering the evidence in the light most favorable to the State, a rational trier of fact could have found all of the elements of the crime charged beyond a reasonable doubt. *State v. Baeza,* 100 Wn.2d 487, 670 P.2d 646 (1983); *see also Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). In *State v. Theroff,* 25 Wn. App. 590, 608 P.2d 1254 (1980), the Washington State Court of Appeals also noted:

> A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. The evidence is interpreted most strongly against the defendant and in a light most favorable to the State.

*Theroff,* at 593.

■ Dobyns was convicted of the crime of possession of marijuana, pursuant to RCW 69.50.401, which reads in pertinent part:

> (e) . . . [A]ny person found guilty of possession of forty grams or less of marihuana shall be guilty of a misdemeanor.

Possession of property can be either actual or constructive. Actual possession occurs when the goods at issue are in the personal custody of the person charged with possession. Constructive possession can be shown if the person charged has dominion and control over the drugs in question or of the premises in which they are located. *State v. Amezola,* 49 Wn. App. 78, 741 P.2d 1024 (1987). Because Dobyns was not present during the execution of the search warrant, the issue before us is whether the State presented sufficient evidence of Dobyns' constructive possession of the marijuana or the premises.

Whether an individual has dominion and control over a controlled substance (and thus, constructive possession) is determined by considering the various indicia of dominion and control and their cumulative effect, that is, the totality of the situation. *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977). Although a showing of exclusive control is not

required, mere proximity is insufficient to show dominion and control. Temporary residence, personal possessions on the premises, or knowledge of the presence of the drug, without more, are also insufficient. *State v. Hystad,* 36 Wn. App. 42, 671 P.2d 793 (1983).

In *State v. Knapstad,* 107 Wn.2d 346, 729 P.2d 48 (1986), a prosecution for possession of marijuana with intent to deliver, the State's evidence was (1) that the defendant's brother was a resident of the house where marijuana was found, (2) drug paraphernalia was found in common areas of the house, (3) a gasoline credit card issued to the defendant several months earlier was found in a drawer in one of the bedrooms, (4) a traffic ticket issued to the defendant 2 weeks prior to the search was found, listing defendant's address as different from that of the house being searched, and (5) the investigating officers saw the defendant's vehicle parked at the searched residence three times in the middle of the night prior to the search. According to the *Knapstad* court, this evidence was insufficient to prove actual or constructive possession. *Knapstad,* at 349.

However, in *State v. Partin, supra,* the defendant, the vice–president of a club, was charged with possession of marijuana found during a search of the group's clubhouse. In examining the question of sufficiency of the evidence of dominion and control, the Washington Supreme Court noted that Partin's connection with the house was far from casual. He had been seen at the house on numerous occasions by the police. His motorcycle had been observed chained to the front porch. An officer previously investigating Partin's claim that his motorcycle was stolen was told to contact Partin at the clubhouse. During the execution of the search warrant, the police answered the phone and the callers wished to speak to Partin. Several people also stopped by looking for Partin.

The search revealed personal items belonging to Partin located in the clubhouse's back bedroom, including a photograph of him, articles of clothing and unemployment pay

stubs. In addition, as vice–president of the club, Partin was acknowledged to have a certain amount of control over the clubhouse, as evidenced by his stepping forward to deal with police who previously came to investigate a noise complaint. *Partin,* at 908. The *Partin* court held that the evidence was sufficient to show dominion and control. *Partin,* at 908.

Applying the law to the facts before us, we hold that the State's evidence was sufficient to show dominion and control over the premises. Prior to the search, Dobyns' car was seen parked near the house. The bill from the ceramics supply store was found on a bulletin board in the house and had been mailed to him at the Phinney Avenue address. The officers obtained one of Dobyns' business cards at the house. The card listed two phone numbers, one of which was the phone number at 6504 Phinney Avenue N. Phone company records showed that this phone number was billed to Ted Dobyns.

Dobyns argues that he was only associated with the front or business portion of the premises, not the living quarters. There is nothing in the evidence to indicate that there are separate entrances to the building, and, in any event, the State's evidence linking Dobyns to the premises was found in the residential portion. The State's evidence was sufficient to show dominion and control, and thus, constructive possession of the marijuana.

MOTION TO SUPPRESS

A warrant may only issue upon probable cause. U.S. Const. amend. 4. The basic test for probable cause to enable a judge to issue a search warrant was set forth in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).[3] To satisfy that test, the affiant must

---

[3]Although the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) modified the 2–prong *Aguilar–Spinelli* test to one of "totality of the circumstances", the Washington Supreme Court in

set forth the underlying circumstances necessary to permit the magistrate issuing the warrant to independently determine that the informant had a factual basis for his allegations; and, second, the affiant must present sufficient facts so the magistrate may determine the credibility or the reliability of the informant.

*State v. Woodall,* 100 Wn.2d 74, 75–76, 666 P.2d 364 (1983).

Dobyns argues that the search warrant affidavit was deficient both as to the basis of knowledge prong and as to the veracity or reliability prong. With respect to the reliability prong, Dobyns contends that because the informant wished to remain anonymous, and the statements that he or she was a citizen without a criminal record, did not give the information in return for leniency on a pending criminal charge, asked for no monetary compensation, and was motivated by an interest in justice were insufficient to show veracity.

In *State v. Berlin,* 46 Wn. App. 587, 731 P.2d 548 (1987), a prosecution for possession of marijuana, the police officer's supporting affidavit for the search warrant stated that the officer had received information concerning a marijuana grow operation from three citizen informants who wished to remain anonymous for fear of retribution. The affidavit went on to state that the officer had checked and found that the informants had no criminal background, came forward voluntarily, all appeared to be honest citizens, and had given the officer their names and telephone numbers. *Berlin,* at 588–89.

The *Berlin* court noted that in all previous Washington cases involving a citizen informant in which the court ruled that the veracity prong was satisfied, the citizen's identity had been revealed to the magistrate. *Berlin,* at 590. The *Berlin* court took note of *State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973), a case in which an informant

---

*State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984) held that the more stringent *Aguilar–Spinelli* test was still the test in Washington.

refused to identify himself, even to the police. The *Chatmon* court held, understandably, that there was insufficient indicia of reliability. *Chatmon,* at 748. However, the *Chatmon* court set forth the following protocol for establishing informant reliability:

> To establish the reliability of a citizen informant, and thus to fulfill the second prong of the *Aguilar* test, it is only necessary for the police to interview the informant and ascertain such background facts as would support a reasonable inference that he is "prudent" or credible, and without motive to falsify. In making this determination, the police may justifiably assume that the ordinary citizen who has seldom or never reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis.
>
> In making this evaluation, an ascertainment of the citizen's identity will almost invariably be necessary. However, should the citizen wish to remain anonymous, as here, his reliability could certainly be corroborated by description of him, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous.

(Citations omitted.) *Berlin,* at 591 (quoting *Chatmon,* at 748). The *Berlin* court went on to examine the affidavit before it, and distinguished the affidavit challenged in *Chatmon,* because the informants in *Berlin* had given their names to the officer, he had checked their backgrounds, and the affidavit contained a legitimate reason why they wished to remain anonymous. *Berlin,* at 591. The *Berlin* court held that the reliability prong was satisfied. *Berlin,* at 591–92.

However, in *State v. Franklin,* 49 Wn. App. 106, 741 P.2d 83, *review denied,* 109 Wn.2d 1018 (1987), an officer received a phone call from a "confidential" citizen advising him that Franklin intended to take marijuana into the penitentiary during a visit with her husband. The officer obtained a search warrant, and the supporting affidavit stated that he had obtained information from a confidential informant who wished to remain anonymous for fear of retribution. The affidavit went on to state that the informant was an upstanding citizen with no criminal record, and his or her only motive was to thwart a crime. *Franklin,* at 107. Although the *Franklin* court cited *Berlin* with approval, it

held that the affidavit before it was insufficient, because no facts were given other than that the informant had no criminal record. Rather, according to the *Franklin* court, additional statements in the affidavit were conclusions by the officer as to the informant's reliability. *Franklin,* at 109–10.

In a dissent, it was noted that the only distinguishing feature between the *Berlin* affidavit and the one before the *Franklin* court was that it was recited in the *Berlin* affidavit that the informants gave their names and addresses. The dissenting judge stated that he would apply the *Berlin* reasoning to the affidavit before the court and uphold the warrant. *Franklin,* at 113 (Green, J., dissenting).

A comparison of the two affidavits would suggest that the dissent's analysis is correct. In fact, because the officer in *Franklin* stated that the informant had no criminal record, it must be inferred that he had at least received a name from the informant. We believe that the better rule of law is found in *Berlin.*

■ We hold that the reliability prong of the warrant before us can be upheld. The only distinction between the affidavit here and that in *Berlin* is that the affidavit here does not state why the informant wishes to remain anonymous. A careful reading of *Chatmon,* however, seems to indicate that a recitation of that reason is only necessary if the informant is withholding his or her identity from the police as well.

With respect to the basis of knowledge prong, Dobyns argues that the affidavit was deficient because it failed to state that the informant had personal knowledge of the facts contained in the declaration, and because the affidavit did not show that the informant had the expertise to identify marijuana. In *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984), the Washington State Supreme Court stated that "[t]o satisfy the 'basis of knowledge' prong, the informant must declare that he personally has seen the facts asserted and is passing on firsthand information." *Jackson,* at 437.

■ When this issue was presented below, the trial court stated as follows:

It appears to me on this record that it's reasonable to conclude from the affidavit and the information states that the informant observed and saw the operation, even though he did not use the language specifically observed in the affidavit. It certainly appears to be a reasonable and necessary inference that he did in fact observe it from being in the residence.

Issuance of a search warrant is a matter of judicial discretion and is reviewed only for abuse of that discretion. *State v. Smith*, 93 Wn.2d 329, 610 P.2d 869, *cert. denied*, 449 U.S. 873, 66 L. Ed. 2d 93, 101 S. Ct. 213 (1980). The affidavit must be accepted on its face and any doubts should be resolved in favor of the warrant. *State v. Fisher*, 96 Wn.2d 962, 639 P.2d 743, *cert. denied*, 457 U.S. 1137 (1982).

The affidavit stated that the informant had been in the residence some 6 weeks previously. The affidavit also indicated that the officer tested the informant's knowledge of marijuana plants, using a marijuana growers' handbook. Under the abuse of discretion standard, we must find that the informant here was passing on firsthand knowledge.

■ Dobyns also argues that because the informant had not been inside the Phinney Avenue premises for 6 weeks, the information rendered was "stale". A search warrant affidavit must set forth sufficient facts and circumstances to support a reasonable probability that criminal activity is occurring. The amount of time between known criminal activity and the issuance of a search warrant is only one factor that must be considered, along with the nature and scope of the criminal activity. Common sense is the appropriate benchmark for staleness. *See State v. Petty*, 48 Wn. App. 615, 740 P.2d 879, *review denied*, 109 Wn.2d 1012 (1987). (In *Petty*, the court held that a 2-week lapse was not too long to establish probable cause where the criminal activity asserted was the growing of a "'quantity of growing [m]arijuana". *Petty*, at 621–22.)

Dobyns suggests that in the absence of specifics concerning the number and height of the plants contained in the alleged growing operation, 6 weeks was too long. The State

argues that the officer's statement in the affidavit that it takes 4 months for plants to mature was sufficient to support the notion that the marijuana growing operation was still being conducted.

Examining the nature and scope of the criminal activity with an eye toward common sense, under an abuse of discretion standard, we hold that the information contained in the affidavit was not stale, even after a lapse of 6 weeks. Having disposed of Dobyns' arguments, we hold that the basis of knowledge prong was also satisfied.

### DISCOVERY OF THIRD SEARCH WARRANT

Dobyns argues that if the search of the third premises occurred first in time (prior to the Phinney Avenue search), and the informant's tip was not accurate, that information should have been given to the magistrate who decided upon the two affidavits concerning Dobyns. Dobyns has requested that this court review the sealed record to determine whether the trial court should have held a hearing on the veracity of the information in the affidavit.

In *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), the United States Supreme Court held that where a defendant makes a preliminary showing that a search warrant affidavit knowingly and intentionally, or with a reckless disregard for the truth, contained a false statement, and the false statement is necessary for a finding of probable cause, then the Fourth Amendment requires that an evidentiary hearing be held. *Franks,* at 171–72.

An examination of the third search warrant and affidavit reveals that the third warrant was issued and the search conducted on February 6, 1987. The affidavit for the third warrant was written after the Phinney Avenue search, because it refers to the successful Phinney Avenue search. It is not entirely clear whether the third warrant was issued before or after the 21st Avenue N.E. search. At any rate, Dobyns' suggestion that the undisclosed search was conducted first in sequence, that it yielded nothing, and that

this information was willfully withheld from the magistrate appears to have no foundation, negating any need for a *Franks* hearing.

In addition, our examination of the third warrant reveals that with the exception of the reference to the Phinney Avenue search, the third warrant and affidavit made no mention whatsoever of Dobyns, such that discovery would be necessary to aid him in his defense.

Judgment affirmed.

PEKELIS and WINSOR, JJ., concur.

Review denied at 113 Wn.2d 1029 (1989).