102 P.3d 833 (2004)
STATE of Washington, Appellant,
v.
Michael Allen BOYER, Respondent and Cross-Appellant.
No. 22060-5-III.
Court of Appeals of Washington, Division 3, Panel Six.
December 9, 2004.
*835 John D. Knodell, Grant County Prosecuting Attorney, Ephrata, WA, for Appellant.
Carl N. Warring, Warring Law Firm PS, Moses Lake, WA, for Respondent.
SCHULTHEIS, J.
Police executing a search warrant for a basement apartment rented to Jose Macias conducted a protective sweep of an area of the basement that belonged to an upstairs apartment. They then climbed stairs located in the swept area and entered the apartment belonging to Michael Boyer. Based on drug paraphernalia found during the protective sweep, the officers obtained another search warrant and found cocaine and firearms in Mr. Boyer's apartment. He was charged by information with possession of cocaine and additional crimes.
After a suppression hearing, the trial court concluded that while the protective sweep of the basement was reasonable and justified, entry of Mr. Boyer's upstairs apartment was unreasonable. Mr. Boyer's incriminating statements and the evidence found in his apartment were suppressed and the charges against him were dismissed without prejudice.
On appeal, the State contends the trial court's findings are not supported by substantial evidence and do not support suppression of the evidence. Mr. Boyer cross-appeals the trial court's conclusions that there was probable cause to issue the warrant to search Mr. Macias's apartment and that the protective sweep of Mr. Boyer's area in the basement was justified. Because we find that the affidavit supporting the search warrant contained insufficient information to establish the credibility of the confidential informant, we reverse and remand for entry of judgment of dismissal with prejudice.

FACTS
Mr. Boyer and his wife own a house in Moses Lake on the western shore of the lake. The house is divided into three living spaces: two upstairs apartments and one apartment in about one-half of the basement. The Boyers live in one of the upstairs quarters. Separate from their living space upstairs is apartment A, accessible only from the street. A stairway connects the Boyers' quarters with their storage area in the basement. Entry to the basement apartment is from the rear of the house, at a door labeled apartment B. This door opens to an 18-foot hallway, with the actual door to apartment B to the immediate right. At the end of the hallway on the left is the door into the Boyers' storage area of the basement. This door, called door no. 2 at the suppression hearing, is usually closed and locked so that the tenant of apartment B cannot enter. Stairs rise from the Boyers' storage area in the basement to the foyer of the Boyers' *836 quarters. At the top of these stairs is a door missing a doorknob.
In early June 2002, Moses Lake police officer Jeffrey Gaddis received information from a confidential informant that someone living in the basement apartment was receiving stolen goods in exchange for cocaine. Officer Gaddis spoke with a neighbor of the Boyers and learned that the house was divided into three units: two upstairs and one in the basement. On June 14, 2002, Officer Gaddis applied for and received a search warrant for "`[t]he apartment located in the bottom south east corner of 1363 Lakeside Dr. in Moses Lake.'" Clerk's Papers (CP) at 94. Entry to apartment B is in the southeast corner of the Boyer house at that address.
Officer Gaddis executed the warrant on June 16 with two other officers, Ray Lopez and Greg Nevarez. When they knocked and announced at the outside door labeled apartment B, Mr. Macias responded and let them into his apartment. Officer Nevarez remained in the hallway while Officers Gaddis and Lopez conducted a protective sweep of apartment B. Leaving Officer Lopez to deal with Mr. Macias, Officer Gaddis then called to Officer Nevarez and asked if the area was secure. Officer Nevarez, who was standing at door no. 2, said that he had found an unlocked door. He and Officer Gaddis entered the Boyers' storage area, where they found drug paraphernalia and a white powder on a dresser. They searched the entire basement area but found no one there.
At the far end of the storage area (the northwest area of the basement), the officers found a stairway rising to the top floor. Officer Gaddis could hear voices coming from the upstairs area. He looked up the stairway and saw that the door was ajar and had no doorknob. The two officers climbed the stairs and walked into the Boyers' apartment. There they encountered Mr. Boyer and his wife. Officer Gaddis told Mr. Boyer he was serving a search warrant on the downstairs apartment and he was unsure where the basement apartment ended and Mr. Boyer's quarters began. He also told Mr. Boyer he had found what appeared to be cocaine on the basement dresser. Mr. Boyer responded, "Yea[h], that's mine." CP at 4. Officer Gaddis and Mr. Boyer then walked downstairs to the basement and Mr. Boyer showed the officer how the apartments were segregated. He was eventually arrested for possession of cocaine.
In a subsequent search of Mr. Boyer's quarters pursuant to a second warrant, officers found paraphernalia, child pornography, and two rifles. He was charged by amended information in December 2002 with possession of cocaine (RCW 69.50.401); second degree possession of a firearm (RCW 9.41.040); and sexual exploitation of a minor (RCW 9.68A.070).
A CrR 3.6 suppression hearing was held in March 2003.[1] After hearing the testimony of Officer Gaddis and Mr. Boyer, the trial court concluded that (1) the first search warrant described the place to be searched  apartmentB  with reasonable particularity; (2) the officers reasonably entered door no. 2 and the Boyers' storage area in the basement to secure officer safety and to determine the extent of apartment B; and (3) cocaine was found in plain view during the protective sweep of the storage area and therefore should not be suppressed. However, the trial court also concluded that police entry into the Boyers' upstairs residence was unreasonable and all statements and evidence discovered after this entry must be suppressed. Declaring that it was unable to proceed on the charges without that evidence, the State moved for an order dismissing the case. On April 15, 2003, the charges against Mr. Boyer were dismissed without prejudice.
The State timely appealed the order of dismissal and the order of suppression. Mr. Boyer cross-appealed the portion of the trial court's findings that justified the Macias search warrant and the protective sweep of the basement storage area.

SEARCH OUTSIDE THE SCOPE OF THE WARRANT
On appeal, the State contends the trial court erred in suppressing evidence obtained *837 after the officers entered the Boyers' apartment upstairs, including inculpatory admissions by Mr. Boyer. The State argues that the officers were justified in making a limited exploration of the upstairs during a protective sweep. Although the trial court concluded that the officers' search of the entire basement was justified by the need for a protective sweep of that area, it decided entry into the top floor was unreasonable. Mr. Boyer contends in his cross-appeal that even the search of his storage area in the basement was unjustified under the warrant or as a protective sweep. We review the trial court's conclusions of law pertaining to the motion to suppress de novo. State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002). The trial court's findings of fact entered after a suppression hearing are reviewed for substantial evidence. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
The Fourth Amendment protects citizens from unreasonable searches and seizures and requires that all warrants are issued "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Warrantless searches and seizures inside a home are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). One of the few exceptions to this rule is the "protective sweep" recognized in Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). United States v. Pena, 924 F.Supp. 1239, 1247 (D.Mass.1996).
The concept of a protective sweep was adopted to justify the reasonable steps taken by arresting officers to ensure their safety while making an arrest. Buie, 494 U.S. at 334, 110 S.Ct. 1093. Generally officers executing an arrest warrant may search the premises for the subject of that warrant, but must call off the search as soon as the subject is found. Id. at 333, 110 S.Ct. 1093. However, the risk of danger with in-home arrests justifies steps by the officers "to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." Id. Consequently, "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. at 334.
To justify a protective sweep beyond immediately adjoining areas, the officers must be able to articulate "facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id; see also State v. Hopkins, 113 Wash.App. 954, 959, 55 P.3d 691 (2002). The sweep is limited to a cursory inspection of places a person may be found and must last no longer than necessary to dispel the reasonable suspicion of danger or to complete the arrest, whichever occurs sooner. Buie, 494 U.S. at 335-36, 110 S.Ct. 1093.
In Washington, as in most other jurisdictions, the protective sweep has not been extended to the execution of search warrants. See 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.10(a), at 658-59 (3d ed.1996). Even those jurisdictions that have extended Buie to protective sweeps made in conjunction with a search warrant have applied only the more stringent test of sweeps made outside the immediate area of an arrest: whether the police can justify their actions with specific and articulable facts that support a reasonable belief the area to be swept harbors a person dangerous to the police. See, e.g., Drohan v. Vaughn, 176 F.3d 17, 22 (1st Cir.1999); United States v. Daoust, 916 F.2d 757, 759 (1st Cir.1990); State v. Smith, 141 N.H. 271, 276-77, 681 A.2d 1215 (1996).
In Pena, 924 F.Supp. at 1247-48, the Massachusetts federal district court rejected an attempt to extend the protective sweep to a residence other than the one authorized in a search warrant. The officers in Pena obtained a search warrant for a second floor apartment. Prior to the search, a confidential informant had told the officers that someone on the third floor was delivering drugs to *838 the second floor apartment. The officers did not attempt to get a search warrant for the third floor because they thought they could not establish probable cause. Instead, they executed the search warrant on the second floor and then conducted a "protective sweep" of the third floor apartment for general safety reasons. Id. at 1244. Pena held that absent probable cause to arrest the person occupying the swept area, and absent a reasonable belief that the swept area harbored a person posing a danger to the police, a protective sweep was not justified. Id. at 1248-49.
No Washington case has addressed a protective sweep incident to execution of a search warrant. We agree with the trial court that, even if a protective sweep was justified under these circumstances, there was no valid reason to extend the search to the upstairs apartment. However, given the weight of authority specifically limiting protective sweeps to arrests or to executions of arrest warrants, we find that the trial court erred as a matter of law in concluding that the warrantless search of the basement rooms behind door no. 2 was justified as a protective sweep. Even those jurisdictions  such as the First Circuit  that have extended Buie to the execution of a search warrant would find the sweep here unjustified because the officers articulated no specific facts that would support a prudent officer's belief that the area harbored a dangerous person.[2]See, e.g., Drohan, 176 F.3d at 22; Daoust, 916 F.2d at 759; Smith, 141 N.H. at 277, 681 A.2d 1215; see also Hopkins, 113 Wash.App. at 960, 55 P.3d 691 (a general desire to make sure no one is hiding is not sufficient to justify a protective sweep outside the immediate area where an arrest has occurred).
The trial court also concluded, however, that the search of the Boyers' basement storage area was reasonable because the officers were unclear whether that area was or was not part of apartment B. This conclusion raises questions concerning the validity of the warrant. See Maryland v. Garrison, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987).
A search warrant sufficiently describes the place to be searched with particularity if it enables the executing officer to find and identify the location without mistake. State v. Dodson, 110 Wash.App. 112, 125, 39 P.3d 324, review denied, 147 Wash.2d 1004, 53 P.3d 1007 (2002). Perfection in the description is not required. Id. The operative question is whether the description will prevent exploratory searches. State v. Perrone, 119 Wash.2d 538, 545, 834 P.2d 611 (1992). The warrant here described the place to be searched as
The apartment located in the bottom south east corner of 1363 Lakeside Dr. in Moses Lake. This is a wood structured residence white in color which is divided into three apartments. The front door is in the basement portion of the house and faces the lake. This has a dark colored screen door and is the furthest door to the south on the basement floor.
Def.'s Ex. 6. A diagram of the basement shows that the back side of the house forms a three-sided arc roughly facing south-southeast. Apartment B occupies the south central and southeast portion of the basement. The only door to the basement lies in the center of the back side of the house and the door to apartment B allows entry into the southeast corner of the basement. Viewed in light of the facts available to Officer Gaddis at the time he prepared the affidavit, the description of the place to be searched is sufficiently particular to support the validity of the warrant. Garrison, 480 U.S. at 85-86, 107 S.Ct. 1013. The question turns, then, on whether the officers exceeded the scope of the warrant.
Examination of State v. Llamas-Villa, 67 Wash.App. 448, 836 P.2d 239 (1992), a Division One case, is instructive. In Llamas-Villa, officers executed a search warrant for apartment 101 at a specified address. After entering and searching apartment 101, an officer exited the apartment and opened a *839 door labeled "storage" located in the common hallway immediately to the right of the apartment door. Id. at 451, 836 P.2d 239. Inside the storage room were several lockers, including one marked "101." Id. The officer found controlled substances inside this locker. Because the storage room door was located next to apartment 101, the appellate court concluded that it was reasonable for the officers to believe that the storage area was appurtenant to the apartment. Id. at 453-54, 836 P.2d 239.
The circumstances of the present case support the trial court's conclusion that it was not clear whether the area behind door no. 2 was "a part of, or used in conjunction with" apartment B. CP at 97. Officer Gaddis's testimony supports the trial court's finding that he "expected the apartment to be located to the left of the exterior door, in the area subsequently found to be part of Defendant's quarters." CP at 94. Further, the trial court found that when Officer Gaddis walked down to door no. 2, he was "at that point uncertain of the layout and physical extent of the apartment to be searched." CP at 95. The fact that the outside door was labeled apartment B implied to the casual visitor that the hallway and its doorways were all part of apartment B. As with Llamas-Villa, 67 Wash.App. at 453-54, 836 P.2d 239, these findings support the conclusion that it was reasonable for the officers to believe the Boyers' storage area was appurtenant to apartment B.
Accordingly, we next turn to the validity of the warrant authorizing the search of apartment B. The State's contention that Mr. Boyer does not have standing to contest the warrant is belied by this court's determination that the search of Mr. Boyer's storage area was valid under the warrant.
A search warrant must be supported by probable cause, based on facts sufficient to establish a reasonable inference that criminal activity is occurring or contraband may be found at a specific location. U.S. CONST. amend. IV; CONST. art. I, § 7; CrR 2.3(c); State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995). We review de novo a magistrate's determination as to whether probable cause supports a search warrant. In re Det. of Petersen, 145 Wash.2d 789, 799-800, 42 P.3d 952 (2002).
Here, the affidavit for the warrant to search the basement apartment was based on information from a confidential informant. To establish probable cause based on an informant's tip, the magistrate must apply the two prongs of the Aguilar-Spinelli test, determining whether the affidavit establishes (1) the basis for the informant's information and (2) the basis for the officer's conclusion that the informant was credible. Cole, 128 Wash.2d at 287, 906 P.2d 925 (citing Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)); State v. Jackson, 102 Wash.2d 432, 436-37, 688 P.2d 136 (1984). Both prongs of the test must be established. Cole, 128 Wash.2d at 287, 906 P.2d 925. However, independent police investigation that corroborates the tip may cure a deficiency in either or both prongs. Id.; Jackson, 102 Wash.2d at 438, 688 P.2d 136. Mr. Boyer challenges both the veracity of the informant and the basis of the informant's information.
The magistrate concluded, from "information provided to the court which cannot be revealed without revealing the informant," that the anonymous informant here was a citizen informant as opposed to a professional informant. Def.'s Ex. 6. When the identity of a citizen informant is not revealed to the magistrate, Washington courts require a heightened demonstration of the informant's veracity. State v. Bauer, 98 Wash.App. 870, 876, 991 P.2d 668 (2000). This more rigorous test protects against the possibility that the informant is an "`anonymous troublemaker'" involved in the criminal activity or motivated by self-interest. Cole, 128 Wash.2d at 287, 906 P.2d 925 (quoting State v. Ibarra, 61 Wash.App. 695, 699-700, 812 P.2d 114 (1991)). The affidavit must contain sufficient background facts to support an inference that the anonymous citizen informant is telling the truth. Bauer, 98 Wash.App. at 876, 991 P.2d 668.
The affidavit at issue here lacks any facts at all to support the veracity of the *840 citizen informant. All we know from the facts presented are that the informant had been to the basement apartment several times over the past four or five months, had reportedly seen stereos and stolen telephone calling cards traded for cocaine, and wished to remain anonymous because he or she feared retaliation. Def.'s Ex. 6. Nothing in the affidavit addresses the informant's background, including any possible criminal associations, standing in the community, reasons for being present at the scene of a crime, or motivation in providing information to the police. Cole, 128 Wash.2d at 287-88, 906 P.2d 925; State v. Dobyns, 55 Wash.App. 609, 618, 779 P.2d 746 (1989). Looking only at the information available to the magistrate, State v. Murray, 110 Wash.2d 706, 709-10, 757 P.2d 487 (1988), we find insufficient information to establish the veracity of the citizen informant.
The affidavit also fails to establish the basis of the citizen informant's knowledge. Usually the basis of knowledge prong is satisfied when the informant declares that he or she is passing on firsthand information. Dobyns, 55 Wash.App. at 619, 779 P.2d 746 (quoting Jackson, 102 Wash.2d at 437, 688 P.2d 136). Although the informant here provided information from firsthand observation, the affidavit does not address the informant's expertise to identify cocaine or basis for belief that the stereos and calling cards were stolen. Id. Without sufficient underlying circumstances, the magistrate had no apparent basis to independently determine that the informant had a factual basis for his or her allegations. Id. at 617, 779 P.2d 746.
Finally, we find insufficient independent police investigation to support the missing elements of the Aguilar-Spinelli test. Jackson, 102 Wash.2d at 438, 688 P.2d 136. Corroborating evidence must point to criminal activity along the lines suggested by the informant. Id. The informant here indicated that 25 or 30 telephone calling cards stolen from "Taco El Rey's" were traded for cocaine around June 1, 2002. Def.'s Ex. 6. According to the officer preparing the affidavit, this information was consistent with a report made in late May 2002 that about 20 calling cards had been stolen. The affidavit does not, however, indicate whether the May 2002 incident involved Taco El Rey's. Theft of calling cards in May does not sufficiently corroborate the informant's assertion that cocaine was traded for stolen calling cards in June.
To summarize, the affidavit of probable cause fails to provide any facts to establish the veracity of the confidential informant or the basis for that informant's conclusion that someone was trading cocaine for stolen goods in apartment B. Independent police investigation failed to corroborate the informant's information sufficiently to overcome the possibility that he or she was an anonymous troublemaker. As a consequence, the search warrant was issued without probable cause and all evidence obtained in its execution must be suppressed. State v. Kinzy, 141 Wash.2d 373, 393, 5 P.3d 668 (2000).
Reversed and remanded for dismissal with prejudice.
WE CONCUR: SWEENEY, A.C.J., and KURTZ, J.
NOTES
[1] CrR 3.6 authorizes a hearing on motions to suppress physical, oral, or identification evidence.
[2] The trial court's finding that the door at the top of the basement stairs was closed is not supported by substantial evidence. This finding, however, is irrelevant to the conclusion that the officers exceeded the scope of both the warrant and any so-called protective sweep when they walked through that door into the Boyers' quarters.