128 P.3d 1271 (2006)
STATE of Washington, Appellant,
v.
Clarence S. FERGUSON, Respondent.
No. 22319-1-III.
Court of Appeals of Washington, Division 3.
February 23, 2006.
Reconsideration Denied March 24, 2006.
*1272 James A. Von Sauer, Ferry County Prosecuting Attorney, Republic, WA, for Appellant.
David N. Gasch, Attorney at Law, Spokane, WA, for Respondent.

PUBLISHED OPINION
BROWN, J.
¶ 1 The trial court dismissed the State's prosecution against Clarence Ferguson after suppressing controlled substance evidence found in a warrantless car trunk search and evidence it believed stemmed from that search. Here, the State mainly contends the trial court erred in granting suppression because the court misapplied the manifest necessity doctrine to a car-trunk search. While the trial court properly excised certain hearsay from the search warrant affidavit, it erred in applying the manifest necessity doctrine to the facts. Further, even excluding the car-trunk evidence, the remaining evidence is sufficient to support the search. We reverse.

FACTS
¶ 2 On August 7, 2002 in Ferry County, Trooper Robert Young conducted a speed stop of a car with Idaho plates on Highway 29, about 150 miles from the Washington-Idaho border. Mr. Ferguson, the driver, stated he had borrowed the car from a friend. Because of the narrow highway shoulder, the stopped car blocked the Hadley road intersection. Mr. Ferguson did not have a driver's license on his person. While *1273 checking Mr. Ferguson's driving status, Trooper Young learned Mr. Ferguson had an outstanding Washington misdemeanor warrant and arrested him.
¶ 3 Trooper Young then contacted the passenger, 17-year-old Trisha Zuchowski. Ms. Zuchowski requested Trooper Young release the car to her. Although Ms. Zuchowski claimed to have a valid license, she did not have any identification with her and Trooper Young could not locate her driving record. The trooper did not attempt to contact the registered Idaho owner.
¶ 4 Trooper Young arranged to have the car towed and impounded because it was blocking an intersection and the registered owner was not present. Incident to Mr. Ferguson's arrest and to accomplish the impoundment inventory, Trooper Young began searching the car's passenger compartment.
¶ 5 In the unlocked glove box, he found a palm scale and a knife showing a reddish, thick, phosphorous-like residue. Under the front seat, he found a coffee pot with burnt residue on the bottom. In the back seat, Trooper Young found an open grocery bag with cartons of about 100 match book covers neatly stacked, with the matches removed and the phosphorous strikers remaining, a bag of rock salt, and miscellaneous glassware. He saw a blue plastic tub with the lid ajar on the back seat containing a glass bottle with tubing extending from the top. In one of the jars was a substance that later tested as ephedrine. Trooper Young detected a chemical odor coming from the car. From his training, Trooper Young knew these items were components consistent with red phosphorous methamphetamine manufacturing in a rolling meth lab. At that point, Trooper Young attempted to get a warrant to search the trunk. Apparently, he could not obtain a warrant at that time, due to the large number of pending warrant applications.
¶ 6 According to Trooper Young, "the main worry is rolling meth labs and the fact that officers got hurt and killed in making contact with ... rolling meth labs." Record of Proceedings (RP) (Nov. 21, 2002) at 14. Having already called for a tow, Trooper Young testified he was concerned due to the items found in the passenger compartment:
After locating the components in the back seat, ... I'm aware that they have to have white gas and other ... and a burner and things like that, and I was worried about where those components were, and if they were stored in a manner that would be safe to transport, or whether or not I had to worry about getting somebody there to decontaminate the situation at the scene. Worried about an explosion.
RP (Nov. 21, 2002) at 15.
¶ 7 Unable to obtain a warrant and concerned about volatile chemicals, he opened the trunk using the inside trunk latch to "see where the gas was and see if it was closed, and whether or not it would be safe to transport." RP (Nov. 21, 2002) at 15. Trooper Young saw a can of white gas, plastic containers and a Coleman stove, and then shut the trunk without touching anything to call a local task force for assistance. The car was towed after the task force responded and apparently addressed Trooper Young's concerns.
¶ 8 On August 9, Detective Jan Lewis applied for a search warrant to seize the items found in the car. The affidavit alleged the foregoing events and related that the vehicle had been seen by a "witness" at an address involved in an ongoing methamphetamine investigation in Inchelium, Washington. Clerk's Papers (CP) at 11. The affiant further stated that neighbors reported "lots of short stay traffic" and "several buckets going in and out of the residence." CP at 11.
¶ 9 The State charged Mr. Ferguson with manufacturing methamphetamine, unlawfully involving a person under 18 in a transaction to manufacture a controlled substance, and possessing ephedrine intending to manufacture methamphetamine.
¶ 10 In November 2002, Mr. Ferguson unsuccessfully moved to suppress the items seized from the car trunk as products of an illegal search and unlawfully issued warrant. The court held Trooper Young's observations "reasonably indicated a `manifest necessity' to open the closed trunk to assure the vehicle could be safely impounded and towed." CP *1274 at 27. The court did agree to excise the witness and neighbor statement portions of the search warrant affidavit.
¶ 11 In March 2003, the trial court rejected Mr. Ferguson's reconsideration efforts based on new testimony. However, sua sponte (on its own), the court reversed its earlier manifest necessity conclusion and suppressed the trunk evidence pursuant to State v. White, 135 Wash.2d 761, 958 P.2d 982 (1998), and State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980).
¶ 12 In April 2003, the trial court denied the State's motion to reconsider the March 2002 sua sponte ruling. The court explained the facts as previously found did not support a manifest necessity to look in the car's trunk without a warrant. Adhering to its March ruling, the court further rejected the State's additional argument that even without the trunk evidence, the passenger compartment evidence was sufficient to support probable cause for the search warrant. The court reasoned the items seen in the trunk were integral to the probable cause determination.
¶ 13 In July 2003, Mr. Ferguson received a ruling suppressing the ephedrine found in the passenger compartment, and the court dismissed the case for insufficient remaining evidence. The State appealed.

ANALYSIS

A. Manifest Necessity Ruling
¶ 14 The issue is whether the court erred concluding no manifest necessity justified Trooper Young's warrantless look into the car trunk before allowing a vehicle tow under these facts. Below, in Part B of our analysis, we analyze the alternative issue of whether without considering the car-trunk evidence or excised portions of the search warrant, the trial court erred in deciding the remaining facts did not support probable cause to issue the search warrant. We decide both issues in the State's favor.
¶ 15 In reviewing findings of fact on a motion to suppress, we "will review only those facts to which error has been assigned." State v. Kinzy, 141 Wash.2d 373, 382, 5 P.3d 668 (2000) (citing State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994)). The State has not assigned error to the findings of fact. We therefore treat them as verities. Id. We review "conclusions of law in an order pertaining to suppression of evidence de novo." State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
¶ 16 Article I, section 7 of the Washington State Constitution provides, "no person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision has been interpreted to find warrantless searches unreasonable per se. White, 135 Wash.2d at 770, 958 P.2d 982 (citing State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996)). However, a few "`jealously and carefully drawn' exceptions" exist to the warrant requirement. Hendrickson, 129 Wash.2d at 70, 917 P.2d 563 (quoting Houser, 95 Wash.2d at 149, 622 P.2d 1218).
¶ 17 These exceptions include consent, exigent circumstances, search incident to a valid arrest, inventory searches, plain view, and Terry[1] investigative stops. Hendrickson, 129 Wash.2d at 71, 917 P.2d 563. The State has the burden of showing by a preponderance of the evidence that a search falls into one of the narrow warrant requirement exceptions. Houser, 95 Wash.2d at 149, 622 P.2d 1218; In re Det. of Petersen v. State, 145 Wash.2d 789, 814, 42 P.3d 952 (2002).
¶ 18 Here, Trooper Young conducted an inventory search of Mr. Ferguson's car while impounding the vehicle. Generally, impoundment requires proper justification and must not be "a general exploratory search for the purpose of finding evidence of a crime." State v. Montague, 73 Wash.2d 381, 385, 438 P.2d 571 (1968). Appropriate reasons for conducting an inventory search include protecting the vehicle owner's property, protecting the police against false claims of theft by the owner, and protecting the police from potential danger. Houser, 95 Wash.2d at 154, 622 P.2d 1218.
¶ 19 Initially, Mr. Ferguson argues the car did not need to be towed, but this ignores *1275 Trooper Young's testimony that the car was blocking an intersection. Thus, the car needed to be moved because it threatened the flow of traffic and public safety. See Houser, 95 Wash.2d at 151-52, 622 P.2d 1218.
¶ 20 Mr. Ferguson next argues the police could have let Ms. Zuchowski or the registered owner drive the car. "If a validly licensed driver is available to remove the vehicle, a reason to impound must be shown." State v. Reynoso, 41 Wash.App. 113, 119, 702 P.2d 1222 (1985). But Ms. Zuchowski did not have either identification or evidence of a driving record. Thus, it was reasonable for Trooper Young to refuse to release the car to Ms. Zuchowski. Similarly, it was reasonable to impound the car and clear the intersection rather than seek an out-of-state resident to come and move the car. In sum, impoundment was properly justified under the circumstances.
¶ 21 Inventory searches after impoundment are limited in scope. Houser, 95 Wash.2d at 154, 622 P.2d 1218. It is reasonable to require "the State show that the search was conducted in good faith and not as a pretext for an investigatory search." Id. at 155, 622 P.2d 1218. In a locked-trunk inventory case, a "manifest necessity" is required. Id. at 156, 622 P.2d 1218. In Houser, our Supreme Court invalidated the inventory search of a locked trunk because no reason existed to believe items in the trunk presented a "great danger of theft," and thus, did not rise to the level of manifest necessity. Id. at 155, 622 P.2d 1218. Similarly, in White, the Court reaffirmed that the possibility of theft does not rise to the level of manifest necessity. White, 135 Wash.2d at 771, 958 P.2d 982.
¶ 22 Mr. Ferguson's facts are distinguishable from those found in White and Houser, where the asserted basis for the trunk search was to guard against theft. Here, the trial court actually found the search purpose to be officer and public safety. We consider this purpose properly supported by the facts as found by the court. Therefore, a manifest necessity existed for looking into the trunk before having the vehicle towed.
¶ 23 Trooper Young testified that the passenger compartment of the car contained numerous items he identified as consistent with a mobile methamphetamine laboratory, based on his training and experience. He smelled a strong chemical odor coming from the car. He believed he had found a rolling "meth" lab. He testified he knew the manufacturing process utilized gas and a heat source, which he did not locate in the passenger compartment. He was concerned about the chemical odors and the likelihood that highly combustible materials were being transported in the trunk that posed a risk to police, the public and the tow truck driver. He located the suspected hazardous materials inside the trunk, and then he closed the trunk and called a task force to remove the hazardous materials before permitting the vehicle to be towed.
¶ 24 Initially, the trial court correctly decided the facts supported a manifest necessity. The court, on its own, reversed itself as a matter of law. We conclude, as a matter of law, that the facts found by the trial court do support its original manifest necessity conclusion. The State met its burden of demonstrating by a preponderance of the evidence that a valid manifest necessity existed for a warrantless limited search of the car trunk  to remove or insure the safeness of the suspected hazardous materials before towing. Thus, the trial court erred in reconsidering and reversing its manifest necessity conclusion. Accordingly, the court erred in suppressing the items found in the car trunk.

B. Search Warrant Sufficiency
¶ 25 The issue is whether the trial court erred in deciding the search warrant lacked sufficient evidence to support probable cause and ordering certain evidence excluded.
¶ 26 A search warrant affidavit must demonstrate reasonable inferences that the defendant is involved in criminal activity and that evidence of the criminal activity will be found in the place to be searched. State v. Cole, 128 Wash.2d 262, 287, 906 P.2d 925 (1995). "Issuance of a search warrant is a matter of judicial discretion and is reviewed only for abuse of that discretion." State v. Dobyns, 55 Wash.App. 609, 620, 779 P.2d 746 *1276 (1989) (citing State v. Smith, 93 Wash.2d 329, 610 P.2d 869 (1980)). "The affidavit must be accepted on its face and any doubts should be resolved in favor of the warrant." Dobyns, 55 Wash.App. at 620, 779 P.2d 746 (citing State v. Fisher, 96 Wash.2d 962, 639 P.2d 743 (1982)).
¶ 27 Here, apparently, the court excised certain witness statements and Trooper Young's manifest necessity car-trunk observations from the search warrant affidavit. The court then invalidated the search warrant for a lack of sufficient evidence supporting probable cause. Later, the court suppressed evidence that a glass jar in the back seat of the passenger compartment contained ephedrine.
¶ 28 First, the State claims the court erred in excising certain information obtained by unnamed citizen informants. Washington courts use the Aguilar-Spinelli[2] test when the existence of probable cause depends on an informant's tip. Cole, 128 Wash.2d at 287, 906 P.2d 925. Under that test, "the affidavit in support of the warrant must establish the basis of the informant's information as well as the credibility of the informant." Id. (citations omitted). If one prong is not satisfied, independent police investigation that corroborates the tip can form the basis for probable cause. Id.
¶ 29 The standard for determining credibility depends on whether the informant is named or unnamed in the affidavit. When an informant is unknown to the issuing magistrate, "there exists a concern that the information may be coming from an `anonymous troublemaker.'" Id. (citing State v. Ibarra, 61 Wash.App. 695, 699-700, 812 P.2d 114 (1991)). The concern is decreased where information in the affidavit establishes that the informant is not involved in criminal activity or motivated by self-interest. Id. "Consequently, if a citizen informant wishes to remain anonymous, the affidavit must contain background facts to support a reasonable inference that the information is credible and without motive to falsify." Cole, 128 Wash.2d at 287-88, 906 P.2d 925 (citing State v. Wilke, 55 Wash.App. 470, 474, 778 P.2d 1054 (1989)).
¶ 30 In this case, the affidavit relates that the vehicle involved in the stop had been seen by a "witness" at the address involved in an ongoing methamphetamine investigation in Inchelium, Washington, and that "neighbors" have reported "lots of short stay traffic" and "several buckets going in and out of the residence." CP at 11. Without more, this information fails both prongs of the Aguilar-Spinelli test. The affidavit provides no basis for the credibility of the witnesses or the basis of their knowledge. Contrary to the State's assertion, the affidavit does not contain any independent police corroboration of these statements. Thus, the court did not err in excising these statements from the affidavit in support of the warrant application.
¶ 31 However, the remaining evidence, even without the car-trunk evidence, was sufficient to establish a reasonable inference that Mr. Ferguson was involved in criminal activity, and that other evidence of this criminal activity would be found in the car. In the affidavit, Trooper Young states he found a palm scale and a knife with residue, a box containing glassware he recognized from a methamphetamine awareness class, and a bag full of matches with covers stacked together, which is how methamphetamine cooks often obtain red phosphorous. He related he recognized these materials as indicative of methamphetamine manufacture using the red phosphorus method. This information alone is sufficient to establish probable cause.
¶ 32 Trooper Young's observations of white gas and burners in the trunk add additional reasonable inferences of criminal activity, but were unnecessary to support probable cause for a search warrant. Thus, even without our above holding that a manifest necessity existed for a warrantless search of the car trunk, sufficient lawfully collected evidence exists in the affidavit to support probable cause to issue the search warrant. The trial *1277 court erred in deciding otherwise and suppressing the ephedrine on that basis.
¶ 33 Reversed.
WE CONCUR: SCHULTHEIS, J., and THOMPSON, J. Pro Tem.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).